On plaintiff's petition for attorney fees filed February 13, petition denied May 19, 1981

In the Matter of the Application of
Donovan Roberts for a Writ of
Habeas Corpus,

ROBERTS,
*Petitioner,*
*v.*
MILLS,
*Respondent.*

(SC 27463)

628 P2d 714

Carla Koford, Eugene, for the petition.

William F. Gary, Solicitor General, Salem, contra.

TANZER, J.

Lent, J., dissenting opinion.

## TANZER, J.

This is an original proceeding in habeas corpus. On the merits, we ordered plaintiff, a juvenile, released because his detention was unlawful for lack of a judicial determination of probable cause to believe that he did acts which would bring him within the jurisdiction of the juvenile court. *Roberts v. Mills,* 290 Or 441, 622 P2d 1094 (1981). This opinion deals with plaintiff's petition for attorney fees.

■ In the absence of statutory authorization, attorneys in habeas corpus cases are not entitled to compensation. *Penrod v. Cupp,* 284 Or 417, 587 P2d 96 (1978). *Cf. United States v. Dillon,* 346 F2d 633 (9th Cir), *cert den* 382 US 978, 86 S Ct 550, 15 L Ed 2d 469 (1965). ORS 34.355 provides for compensation of attorneys who are appointed to represent indigent habeas corpus plaintiffs. Plaintiff's attorney is not appointed, is not therefore within the coverage of the statute, and has not petitioned for compensation.

■ Plaintiff nevertheless claims attorney fees because the habeas corpus petition alleged a claim for relief under 42 USC § 1983[1] and attorney fees for such claims are available under 42 USC § 1988.[2] The state counters that a § 1983 claim cannot be brought in the state Supreme Court in the form of habeas corpus. Assuming for argument that a habeas corpus proceeding can be a "proper proceeding for redress" under § 1983 and that the inclusion of a § 1983 claim among the bases for relief is sufficient to make it "an action or proceeding to enforce a provision of section[s] * * * 1983" such that "the court in its discretion may allow the prevailing party * * * a reasonable attorney's fee" under § 1988, we decline to exercise our statutory discretion to award attorney's fees in this case.

---

[1] The sole reference to 42 USC 1983 is in this paragraph of the petition for writ of habeas corpus:

"Plaintiff brings this action pursuant to 42 U.S.C. § 1983, *see Terry v. Kolski,* 78 Wis. 475, 254 N.W. 2d 704 (1977), the Fourth and Fourteenth Amendments to the United States Constitution, and Article 1, Section 9 of the Oregon Constitution, ORS 34.310 to 34.730, and Rule 32 of the Oregon Rules of Civil Procedure."

[2] 42 USC § 1983 provides in pertinent part:

A primary purpose of § 1983 is to provide a remedy for violation of a person's civil rights where state remedies are inadequate. *Monroe v. Pape,* 365 US 167, 173, 81 S Ct 473, 5 L Ed 492 (1961). In Oregon, the writ of habeas corpus, provided for by ORS 34.310, is a traditional remedy for the release of a party restrained in violation of his civil rights. Relief was allowed this plaintiff based solely upon construction and application of Oregon statutes. Insofar as this case is concerned, the state remedy was procedurally and substantively adequate, and the federal enactment of § 1983 filled no void. The bare reference to § 1983 in the habeas corpus petition was proper, but it turned out to be superfluous. The invocation of § 1983 simply had no effect whatever upon the decision of the case or the relief granted.

The only potential effect of plaintiff's inclusion of a claim under § 1983 is to afford a basis for plaintiff's prayer for attorney fees under § 1988. Here, plaintiff had access to a lawyer because his counsel was furnished by the state in the ordinary course of the underlying juvenile proceeding pursuant to ORS 419.498(2). To apply § 1988 in this case would have no effect beyond amending ORS 34.355 to include non-appointed lawyers. Congress had a larger purpose in mind.

The purpose of 42 USC § 1988 is to ensure that private citizens have a meaningful opportunity to vindicate the important congressional policies contained in the Civil Rights Act. S. Rep No. 94-1011, 94th Cong 2nd Sess 4 (1976), 5 US Code Cong. & Admin News Serv, § 5908 (1976). Here, where an adequate state procedure exists for vindication of the juvenile's right to be free from illegal restraint, we decline to award attorney fees under § 1988.[3]

---

"Every person who, under color of any statute * * * of any State * * * subjects, or causes to be subjected, any citizen of the United States * * * to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

42 USC § 1988 provides in pertinent part:

"* * * In any action or proceeding to enforce a provision of sections * * * 1983 of this title * * * the court, in its discretion, may allow the prevailing party * * * a reasonable attorney's fee as part of the costs."

[3] We are mindful that in federal courts attorney fees have been granted under § 1988 where federal jurisdiction was based on § 1983 but the case was

**LENT, J.**, dissenting.

The matter now before us is the plaintiff's petition for an allowance of reasonable fees to his attorney. We expressly reserved this matter "for ancillary consideration" in our opinion in *Roberts v. Mills,* 290 Or 441, 622 P2d 1094 (1981). See n. 7, 290 Or at 448, 622 P2d at 1098. *Compare Williams v. Alioto,* 625 F2d 845 (9th Cir 1980).

The petition cites as authority for this court to award fees: "ORS 20.010, 42 U.S.C. § 1988, ORCP 32 O, and the equitable powers of this Court."[1]

ORS 20.010 provides for "costs" rather than an allowance of attorney fees in the sense of this petition.

---

decided on a pendant state claim. *See Lund v. Affleck,* 587 F2d 75 (CA RI 1978); *Anderson v. Redman,* 474 F Supp 571 (DSC Del 1971). That situation is distinguishable from the instant case in which the § 1983 claim is essentially surplusage. Federal courts have also allowed attorney's fees where there are two federal law claims, one based on § 1983 and the other not, and where the case was decided on the non-fee claim, but both claims arose out of a nucleus of common facts. *See White v. Beal,* 447 F Supp 788 (DC Pa 1978), *Southeast Legal Defense Group v. Adams,* 436 F Supp 891 (DC Or 1977). That situation is more analogous to this but we believe our approach to be preferable.

[1] ORS 20.010 provides:

"The measure and mode of compensation of attorneys shall be left to the agreement, express or implied, of the parties; but there may be allowed to the prevailing party in the judgment or decree certain sums by way of indemnity for his attorney fees in maintaining the action or suit, or defense thereto, which allowances are termed costs."

42 USC § 1988 provides:

" * * * In any action or proceeding to enforce a provision of sections * * * 1983 of this title * * * the court, in its discretion, may allow the prevailing party * * * a reasonable attorney's fee as part of the costs."

ORCP 32 O provides:

"An award of attorney fees against the party opposing the class and any fee charged class members shall be reasonable and shall be set by the court."

*See also* ORCP 32 G.(2) pertaining to attorney fees.

Plaintiff has cited as alternative authority ORS 419.498(2). That subsection is authority for payment of compensation to counsel appointed to represent a child in a juvenile hearing. I do not view this habeas corpus proceeding as part of the juvenile hearing in which plaintiff's counsel was appointed to represent plaintiff.

As further alternative authority, plaintiff cites the plaintiff's right "to effective legal counsel, and due process and equal protection of the law." I really don't understand this assertion and would not care to award fees upon that ground.

Defendant does not challenge the plaintiff's entitlement to such costs. Petitioner's request for a reasonable fee is not cognizable under ORS 20.010.

ORCP 32 is concerned with class actions. ORCP 32 O gives the court the power to regulate and set the amount of an award of attorney fees.[2] Since we expressly denied plaintiff's motion to be recognized as a member of an asserted class, *Roberts v. Mills, supra,* we should not make any allowance of attorney fees under that section.

This is not a suit in equity. Defendant does not really pursue the argument for exercise of the power of a court of equity to award attorney fees. *See Deras v. Myers,* 272 Or 47, 65-66, 535 P2d 541 (1975).

The remaining possible basis for an award of fees is 42 USC § 1988 (hereinafter § 1988). The majority declines to make an award under that section. It finds that plaintiff had no need to rely upon 42 USC § 1983 (hereinafter § 1983) because Oregon law provided a completely adequate remedy by habeas corpus proceedings; therefore, plaintiff's claim that he was proceeding under § 1983 is superfluous. I cannot agree.

42 USC § 1983 provides:

"Every person who, under color of any statute, * * * of any State * * * subjects, or causes to be subjected, any citizen of the United States * * * to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. * * *"

The statute, by its terms, is applicable to this case. The defendant is a person who acted under color of a state statute. As an examination of our opinion on the merits in this case conclusively shows, the defendant sought to justify his action in depriving the plaintiff of his liberty under the statutes of this state.

Was this an "other proper proceeding for redress"? We answered that by finding that plaintiff was improperly

---

[2] It appears that whether there is to be an award is not expressed in that section. It may be that the power to make an award against the party defendant depends upon inference. *See* ORCP 32G.(2).

imprisoned. It seems there could be no valid argument that habeas corpus is not a "proper proceeding" to challenge the alleged legality of this imprisonment and thereby seek redress.

Whether it be described as a right, privilege or immunity, plaintiff's interest in a judicial hearing before being imprisoned, or deprived of his liberty, was indubitably invaded by holding him without a judicial determination of probable cause for the complained of restraint upon his freedom.

As a matter of fact, I do not read the majority opinion as holding that plaintiff's method or right to seek redress is not described and embraced by § 1983; rather, I conclude that the majority's major premise for denying recovery is that there was *no need to invoke § 1983* because Oregon law proved an adequate remedy, regardless of § 1983. That may be, but that does not seem to be the basis upon which the courts have determined whether a plaintiff may proceed under § 1983.

Before turning to the cases which have approved the plaintiff's right to proceed under § 1983 although there was an obviously adequate proceeding for redress under the common law by way of an action for damages against the defendant, I would like to emphasize that our decision on the merits saved the validity of the statutes under which defendant justified his restraint of plaintiff only by holding that those statutes required a judicial probable cause hearing in order to satisfy the state and federal constitutions.

The majority has cited *Monroe v. Pape,* 365 US 167, 173, 81 S Ct 473, 5 LEd 2d 492 (1961), for the statement that *one primary purpose* of § 1983 was to provide a remedy not obtainable under state law. It is true that that court so stated. That court further noted that the legislation had another aim of overriding certain kinds of state laws and that a third aim was much broader than the first two. That third aim was to provide a federal remedy where the state remedy was not practical. The court drew upon the legislative history through floor debate to show that the momentum behind this legislation lay in the failure of state officials to enforce state laws with an equal hand.

That is exactly what we have in the case at bar. It is not a question of the good faith[3] of the defendant Mills. It is that by his holding plaintiff in custody and defending that custody under color of state law he subjected the plaintiff to deprivation of a right secured by the constitution. This is just what § 1983 addresses.

What is interesting about *Monroe v. Pape, supra,* is that the United States Supreme Court there held that the complaint stated a cause of action under what is now § 1983. In that case the Court held that a cause of action is stated under the statute when the plaintiff alleges a denial of due process at the hands of state government officials, even though they were acting in violation of state law. The plaintiffs, some eight in number, were all members of the same family. They alleged that a squad of city policemen, led by Pape, without any warrant broke into their residence in the night and made them get out of bed. They forced the father and mother to stand naked, it was alleged, in one room together with the children while the invaders ransacked the residence, searching for clues to a recent murder. The search was fruitless; however, the defendants took Mr. Monroe to police headquarters, held him incommunicado for ten hours, interrogated him and subjected him to police lineups. During this time they did not take him before any one of several available magistrates, did not inform him of his rights, and did not allow him to see an attorney. He was then released without the filing of any criminal charges against him. The defendants did not contend that any state statute made their conduct legal; rather, they argued that Monroe's detention was sanctioned by the municipal police department "as a part of its customary procedures."

The court found that the case was properly premised upon what is now § 1983. It was not even suggested that because the common law of Illinois, the locus of the above described conduct, recognized the tort of false imprisonment,[4] an action under § 1983 would not lie.

---

[3] Immunity to a cause under § 1983 does not flow from defendant's good faith. *Owens v. City of Independence, Missouri, et al.,* 445 US 622, 100 S Ct 1398, 63 L Ed 2d 673, *reh. denied* 446 US 993, 100 SC 2979, 64 L Ed 2d 850 (1980).

[4] For the proposition that the tort of false imprisonment was then recognized in Illinois, *see Lindquist v. Friedman's,* 285 Ill App 71, 1 NE2d 529 (1936).

In *Howell v. Cataldi,* 464 F2d 272 (3d Cir 1972), the action under § 1983 was for acts of police officers for infliction of cruel and unusual punishment prohibited by the eighth amendment to the United States Constitution. Plaintiff had been involved in an auto accident, and to the arresting officers he appeared to be intoxicated and unwilling or unable to respond to their inquiries. He was actually in a diabetic coma. At the police station, one officer smashed plaintiff's head to a counter, another hit him in the stomach, and yet another hit him on the head with a blackjack. One of the arresting officers hit him on the shins with a wooden club for some time. The other party to the auto accident, who testified to the police acts, averred that plaintiff did not precipitate such conduct. Obviously, a cause of action would have been possible in Pennsylvania state courts for the tort of battery. No one suggested that although such a cause would have afforded full redress, § 1983 did not apply.

Another case was *Anderson v. Nosser,* 438 F2d 183 (5th Cir 1971), where racial protest demonstrators, who were incarcerated for the sole purpose of ensuring their presence at trial, were the plaintiffs. They had been transported after arrest over 200 miles to the state penitentiary and placed in the maximum security unit. There, the prison personnel carried out "standard" treatment for prisoners placed in the maximum security unit. The male prisoners were required to strip naked and the females to their underwear. The females were deprived of medicines and sanitary napkins. All prisoners were compelled to consume a laxative.

> "The prisoners were then led to the cells. Up to eight persons were placed in each cell, which contained two steel bunks without mattresses or other bedding, a toilet without a seat, and a wash basin. There were no towels or soap and there was inadequate toilet paper. The temperature ranged from 60 to 70 degrees, the chill being aggravated by exhaust fans which blew intermittently on the occupants. * * * Moreover, while standing in the prison courtyard awaiting processing, several plaintiffs were kicked, pushed, cursed, and abused by the highway patrolmen."

438 F2d at 187-188. The action was under § 1983 for false imprisonment and cruel and unusual punishment. Again it

is apparent that common law tort actions would have lain. There was no showing that the state would not have afforded a remedy by such causes of action. Yet no one suggested that the plaintiffs could not proceed under § 1983 because of the availability of other adequate remedies.

In *MacDonald v. Musick*, 425 F2d 373 (9th Cir 1970), the plaintiff unsuccessfuly sought a writ of habeas corpus in the United States District Court. He alleged that he had been unlawfully arrested by city police in Newport Beach, California; that he had a right to resist, and that as a result of his doing so he was badly beaten by the police. The court held that he,

"in addition to whatever rights he had under the law of California, had a claim to a federal right under the Civil Rights Act, 42 U.S.C. § 1983."

425 F2d at 377. The lower court was reversed.

To me it appears that the majority's premise that since state habeas corpus in the case at bar did, in fact, afford a remedy, attorney fees are not to be awarded on a § 1983 claim, is erroneous.

The majority finds some comfort, which I do not comprehend, in S Rep No 94-1011, 94th Cong, 2nd Sess 4 (1976), 5 US Code Cong & Ad News, § 5908 (1976). In *Alyeska Pipeline Serv. v. Wilderness Soc.*, 421 US 240, 95 S Ct 1612, 44 L Ed 2d 141 (1975), the court severely limited the power of the federal courts to award attorney fees in any amount greater than those awarded as "costs" under various federal statutes. Those costs were much like our own "prevailing attorney fees" as set forth in ORS ch 20. According to S Rep No 94-1011, *supra*, the Civil Rights Attorney's Fees Awards Act of 1976, amending § 1988, was to ensure the power of a court to award reasonable fees in § 1983 cases. The report states in part:

"* * * All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain.

"In many cases arising under our civil rights laws, the citizen who must sue to enforce the law had little or no money with which to hire a lawyer. If private citizens are

to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court."

5 US Code Cong & Ad News, *supra* at 5910. I submit that anyone who reads the full Report will find that the Congress was doing everything it felt necessary and proper to encourage the award of attorney fees in § 1983 cases, not to discourage them.

The majority exercises the court's discretion to deny an award of attorney fees. Report No. 94-1011 has something pertinent to the exercise of the discretion granted in § 1988. Pages 4 and 5 of the Report indicate that it was the intent of the legislation that attorney fees should ordinarily be recovered unless there were special circumstances which would render an award of fees "unjust." The majority stands that intent upon its head by treating the award as something to be withheld at the whim of the court.

The Report concludes:

"If the cost of private enforcement actions becomes too great, there will be no private enforcement. If our civil rights laws are not to become mere hollow pronouncements which the average citizen cannot enforce, we must maintain the traditional effective remedy of fee shifting in these cases."

The reach of the claim for attorney fees in the case at bar goes nowhere near the limits recently reached in *Maine v. Thiboutot,* 448 US 1, 100 S Ct 2502, 65 L Ed 2d 555 (1980). The case is not in point in the sense that it arose out of a situation similar to the case at bar; however, the court in *Thiboutot* found authority under the Civil Rights Attorney's Fees Act of 1976, amending § 1988, to authorize an award of attorney fees to a state court plaintiff who challenged, under § 1983, a deprivation of certain welfare benefits. In doing so, the court gave particular attention to the *language* of § 1988. Attention by this court to the language of § 1988, rather than to what the aims of Congress may have been in the 19th century, would disclose that this is a proceeding to enforce a provision of § 1983.

I conclude that the record in this case demonstrates that the defendant, in his official capacity, was "liable," as that term is used in § 1983, to this plaintiff and that habeas corpus was an "other proper proceeding for redress." This was "any * * * proceeding" under § 1988 to enforce a provision of § 1983, and unless this court can point to reasons which make it unjust to award attorney fees, it abuses its discretion to refuse the claim. Rather than this being a case in which the award would be unjust, this is a case calling for such an award. Plaintiff's counsel spent a very considerable amount of time in obtaining redress for plaintiff, a person found by the juvenile court to be impecunious. The cause advanced was of a general significance. Compare our reasons for awarding fees in *Deras v. Myers, supra,* because of that factor.

It appears that counsel's devotion to the cause of upholding the constitutional rights of juveniles is to be compensated only by that feeling of satisfaction for a job well done. Unfortunately for her, that isn't apt to provide her with the wherewithal to acquire any material benefits for her labors.

I dissent.

Tongue, J., joins in this dissent.