Argued and submitted May 3, the decision of the Court of Appeals affirmed in part and reversed in part; the judgment of the circuit court affirmed in part and reversed in part November 30, 1989, reconsideration denied January 11, 1990

OREGON STATE POLICE OFFICERS
ASSOCIATION, INC. et al,
*Respondents on Review,*

*v.*

STATE OF OREGON et al,
*Petitioners on Review.*

(TC A8508-05041; CA A46148; SC S35924)

783 P2d 7

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause for petitioners on review. With him on the petition were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

James S. Coon, Portland argued the cause for respondents on review. With him on the response was Imperati, Barnett, Sherwood & Coon, P.C., Portland.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

The primary issue in this case is whether the political activity clause of ORS 181.400(2) violates Article I, section 8, of the Oregon Constitution. It does. A secondary issue is whether plaintiffs are entitled to attorney fees as prevailing parties because they also pled a claim under 42 USC § 1983. They are not.

### I.

ORS 181.400(2) provides in part:

"Notwithstanding any other law, no member of the state police shall in any way be active or participate in any political contest of any general or special election, except to cast the ballot of the member of the state police."[1]

Plaintiffs are the Oregon State Police Officers Association (OSPOA), an employe organization representing all state police officers up to the rank of senior trooper, and Stephen Beck, OSPOA's president. They sued the state, the Department of State Police, and the Department's Superintendent (hereafter referred to collectively as "defendants") for declaratory and injunctive relief. They contend that the political activity clause of ORS 181.400(2) violates Article I, section 8, of the Oregon Constitution, which provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

They also contend that the clause violates Article I, section 20, of the Oregon Constitution (privileges or immunities clause), and the First and Fourteenth Amendments to the United States Constitution. *See* 42 USC § 1983.

After plaintiffs filed their complaint, but before trial,

---

[1] ORS 181.400 was enacted in 1931 and has remained substantially unchanged since that time. The statute has not been cited in or been the subject of any reported appellate decision. The statute itself does not contain a penalty clause. Nor is there any other statutory provision that specifically authorizes any criminal or civil penalty, forfeiture, sanction, or disciplinary action for a state police officer's violation of ORS 181.400. The only apparent statutory sanction is found in ORS 181.290 (grounds for removal of state police).

the Superintendent issued "guidelines" purporting to interpret ORS 181.400(2) and to clarify the political activity prohibited by that statute. The Superintendent issued the guidelines pursuant to ORS 181.280, which provides:

"The superintendent shall

"* * * * *

"(2) Make rules and regulations for the discipline and control of the state police."[2]

The guidelines permit state police officers to campaign for or against nonpartisan candidates; to be candidates for and to hold nonpartisan offices (except trial judge, sheriff, and district attorney); to attend partisan candidates' speeches and similar political meetings; to display bumper stickers on their personal vehicles and lawn signs at their personal residences; and to make monetary contributions to partisan and nonpartisan candidates. Officers may not be candidates for partisan office; participate in the management of a partisan political party or campaign; campaign for or against partisan candidates; solicit political contributions on behalf of partisan candidates, committees, or political parties; or participate actively in any effort organized by or on behalf of a partisan candidate or political party which is intended to solicit votes or contributions for or against a particular partisan candidate. The guidelines also permit broad political activity with regard to initiative and referendum petitions but require officers to give prior notice to the Superintendent before engaging in any ballot measure campaign activity.

Plaintiffs contend that the Superintendent's guidelines violate the same state and federal constitutional provisions. They also contend that the guidelines deny them equal protection of the law because they are more restrictive of off-the-job political activity than ORS 260.432(2), Oregon's

---

[2] The Superintendent asserts that the guidelines are an "internal management directive to establish personnel rules" and thus within a statutory exception to Administrative Procedures Act rulemaking requirements. *See* ORS 183.310(8)(a)(B). Plaintiffs do not challenge that assertion. Thus, we do not address whether the Superintendent does, in fact, have authority to promulgate guidelines without following Administrative Procedures Act rulemaking requirements, ORS 183.310 to 183.350. Nor do we decide whether, independent of ORS 181.400(2), the Superintendent has authority to impose greater restrictions on state police officers' free speech rights than the legislature imposed on public employes generally in Oregon's "Little Hatch Act," ORS 260.432(2), *infra,* n 3.

"Little Hatch Act," which applies to public employes generally.[3] Plaintiffs are subject to the provisions of ORS 260.432(2). *See* ORS 260.432(4). Violation of ORS 260.432 is punishable by a civil penalty. ORS 260.995(1). Plaintiffs do not challenge the constitutionality of those restrictions, and the constitutionality of ORS 260.432(2) is not in issue here. Therefore, the question is whether the political restrictions placed on plaintiffs by the political activity clause of ORS 181.400(2) violate Article I, section 8, insofar as they are *in excess of* the restrictions imposed on plaintiffs by ORS 260.432(2).

The circuit court held that both the political activity clause of ORS 181.400(2) and the Superintendent's guidelines are unconstitutionally overbroad under the state and federal constitutions and that they deny plaintiffs equal protection of the laws, and enjoined defendants from enforcing them. The court also awarded plaintiffs attorney fees on their 42 USC § 1983 claims.[4]

The Court of Appeals affirmed, holding that ORS 181.400(2) "is facially inconsistent with Article I, section 8," and that no narrowing construction could save the statute. *Oregon State Police Assn. v. State of Oregon,* 94 Or App 478, 766 P2d 408 (1988). The Court of Appeals did not reach the other state or federal constitutional issues raised by the parties, but it affirmed the trial court's award of attorney fees.[5]

---

[3] ORS 260.432(2) provides:

"No public employe shall solicit any money, influence, service or other thing of value or otherwise promote any political committee or promote or oppose the nomination or election of a candidate, the adoption of a measure or the recall of a public office holder while on the job during working hours. However, this section does not restrict the right of a public employe to express personal political views."

[4] 42 USC § 1988 provides:

"In any action or proceeding to enforce a provision of * * * [42 USC §] 1983 * * * the court, in its discretion, may allow the prevailing party * * * a reasonable attorney fee as part of the costs."

[5] The Court of Appeals relied on *Lofft v. State Board of Higher Ed.,* 89 Or App 614, 750 P2d 515 (1988). No petition for review was filed in *Lofft,* and, therefore we had no occasion to review the Court of Appeals' 42 USC § 1988 analysis in that case.

## II.

■ Plaintiffs do not argue that ORS 181.400(2) is unconstitutional as a direct prohibition on protected political speech. They argue only that the statute is overbroad. Defendants virtually concede that, standing alone, the statute is overbroad. They argue, however, that the narrowing interpretation of the Superintendent's guidelines brings the political activity clause within constitutional bounds, and that the appropriate inquiry is whether the statute is constitutional as interpreted and implemented by the guidelines.

We first examine plaintiffs' overbreadth claim under the Oregon Constitution. *See Sterling v. Cupp,* 290 Or 611, 614, 625 P2d 123 (1981). The state asserts that ORS 181.400(2) aims at maintaining a nonpolitical police force. Statutes directed at an *effect* of speech may be constitutional, unless the statute is overbroad. *See, e.g., In re Lasswell,* 296 Or 121, 673 P3d 855 (1983); *State v. Robertson,* 293 Or 402, 649 P2d 569 (1982); *cf. Cooper v. Eugene Sch. Dist. No 4J,* 301 Or 358, 723 P2d 298 (1986), *appeal dismissed* 480 US 942 (1987).

Political speech is an essential form of expression protected by Article I, section 8. *See Ivancie v. Thornton,* 250 Or 550, 553, 443 P2d 612 (1968), *cert den* 393 US 1018 (1969); *Minielly v. State,* 242 Or 490, 499, 411 P2d 69 (1966).[6] In prohibiting *any* political activity or speech except voting, ORS 181.400(2) imposes restrictions that go far beyond any permissible limitation that the state may place on state police officers' Article I, section 8, rights. The statute impermissibly prohibits state police officers from engaging in any manner in the political election process. Nothing in the record demonstrates that the promotion of the efficiency, integrity, and discipline of the state police requires the prohibition contained in ORS 181.400(2). *See Minielly v. State, supra,* 242 Or at 498-99. To paraphrase *City of Hillsboro v. Purcell,* 306 Or 547, 556, 761 P2d 510 (1988), the state may yet choose to

---

[6] In *Deras v. Myers,* 272 Or 47, 62, 535 P2d 541 (1975), in holding that a statute limiting campaign expenditures violates Article I, section 8, of the Oregon Constitution, we stated:

"[The law] closes or impedes important channels of communication on public issues and thus denies citizens freedom of expression where the protection of that constitutional right is the most necessary to preserve our system of government."

regulate rather than totally proscribe the political activity of state police officers. The state has not yet done so.

## III.

Ordinarily, an agency can interpret a statute so as to exclude unconstitutional applications before the agency is forced to question the statute's validity. *Cooper v. Eugene Sch. Dist. No. 4J, supra,* 301 Or at 365. Similarly, we will not construe a statute to violate constitutional prohibitions unless no other construction is possible. *Roberts v. Mills,* 290 Or 441, 447, 622 P2d 1094 (1981); *State v. Smyth,* 286 Or 293, 296, 593 P2d 1166 (1979). Here, no limiting regulation could be both consistent with the *express* prohibition of ORS 181.400(2) against any political activity except voting and at the same time narrow the statute's scope within constitutional limits. ORS 181.400(2) cannot be saved by judicial or agency interpretation. We hold that the political activity clause of ORS 181.400(2) is overbroad in violation of Article I, section 8, of the Oregon Constitution.

Because we hold that the clause violates Article I, section 8, we need not determine plaintiffs' claims under Article I, section 20, of the Oregon Constitution or under the First and Fourteenth Amendments. *See Suess Builders v. City of Beaverton,* 294 Or 254, 267, 656 P2d 306 (1982); *Deras v. Myers,* 272 Or 47, 53, 535 P2d 541 (1975).

## IV.

We consider plaintiffs' parallel federal claims only to the extent necessary to resolve defendants' contention that the circuit court erred in awarding plaintiffs attorney fees under 42 USC § 1988.

We previously considered this issue in *Roberts v. Mills,* 291 Or 21, 628 P2d 714 (1981). In that case, Roberts sought his release from custody under both state habeas corpus law and 42 USC § 1983. He prevailed.[7] When he later petitioned for attorney fees pursuant to 42 USC § 1988, this court denied his petition:

---

[7] Roberts' habeas corpus petition was based on both the state and federal constitutions. This court's decision, *Roberts v. Mills,* 290 Or 441, 622 P2d 1094 (1981), does not indicate whether Roberts' claim was sustained on state or federal constitutional grounds or both.

"A primary purpose of [42 USC] § 1983 is to provide a remedy for violation of a person's civil rights where state remedies are inadequate. \* \* \* Insofar as this case is concerned, the state remedy was procedurally and substantively adequate, and the federal enactment of § 1983 filled no void. The bare reference to § 1983 in the habeas corpus petition was proper, but it turned out to be superfluous. The invocation of § 1983 simply had no effect whatever upon the decision of the case or the relief granted.

"\* \* \* \* \*

"The purpose of 42 USC § 1988 is to ensure that private citizens have a meaningful opportunity to vindicate the important congressional policies contained in the Civil Rights Act. Here, where an adequate state procedure exists for vindication of the juvenile's right to be free from illegal restraint, we decline to award attorney fees under § 1988." 291 Or at 24.[8] (Citations and footnote omitted).

In *Sterling v. Cupp, supra,* 290 Or at 614, we explained that the state does not deny any right claimed under the federal Constitution when the claim before the court in fact is fully met by state law. *See also Suess Builders v. City of Beaverton, supra,* 294 Or 267; *Deras v. Myers, supra,* 272 Or at 53. In this case, state remedies are adequate to protect plaintiffs' rights. Therefore, the state did not deny them any federal constitutional rights. Because plaintiffs were entitled to relief based upon an interpretation and application of the Oregon Constitution, their invocation of 42 USC § 1983 was unnecessary to the decision or the relief granted. We hold that the circuit court erred in awarding plaintiffs 42 USC § 1988 attorney fees.

There may be cases in which protection of a claimed right under Oregon statutory or constitutional law is in doubt, for instance, because lower court or responsible state agencies

---

[8] We recognize that nonavailability of attorney fees for state claims may cause plaintiffs to disfavor state claims when they have federal claims for which fees are available. Indeed, Justice Lent's arguments in dissent in *Roberts* are not without merit. As Justice Brennan pointed out in *Maine v. Thiboutot,* 448 US 1, 11 n 12, 100 S Ct 2502, 65 L Ed 2d 555 (1980), "if fees were not available in state courts, federalism concerns would be raised because most plaintiffs would have no choice but to bring their complaints concerning state actions to federal court." However, after our decision in *Roberts,* 291 Or 21, those considerations are now in the hands of the legislature, which has not chosen to act in this area. *See* Friesen, *Recovering Damages for State Bills of Rights Claims,* 63 Tex L Rev 1269, 1303-10 (1985).

have previously rejected the claim, so that reliance on a federal constitutional guarantee reasonably can be said to be necessary. But this court's modern decisions under Article I, section 8, should leave no basis to believe that a citizen of Oregon must invoke the federal constitution to protect rights to free political speech and participation.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court holding that the political activity clause of ORS 181.400(2) violates Article I, section 8, of the Oregon Constitution, is affirmed. The judgment of the circuit court awarding plaintiffs attorney fees is reversed.

**LINDE, J.,** concurring.

It soon will be 100 years since Judge Oliver Wendell Holmes for the Supreme Judicial Court of Massachusetts, wrote of a predecessor of today's plaintiffs: "The petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman." *McAuliffe v. New Bedford,* 155 Mass 216, 220, 29 NE 517 (1892). The epigram was facile; McAuliffe did not claim a constitutional right to be a policeman but a right not to be disqualified or dismissed from that position because he exercised the political rights of a citizen. This court long has recognized that citizens cannot be forced to sacrifice all political rights simply because they accept public employment. *Minielly v. State,* 242 Or 490, 411 P2d 69 (1966) (invalidating requirement that civil service employees resign when becoming a candidate for elective office).

The court therefore correctly decides that ORS 181.400(2) is unconstitutional under Article I, section 8 (and, I believe, under other Oregon constitutional provisions for the political rights of citizenship), insofar as it purports to deny state police officers all participation in political activities beyond voting. It is less obvious whether the statute is flatly invalid on its face because it is textually directed against political speech and writing rather than some feared effect of political activity by police officers, or whether the statute is overbroad because it so far exceeds any permissible regulation of those activities that a court cannot save it.

ORS 181.400(2), which states no penalty, presumably

is not a penal law. Analysis therefore begins with the question whether there are some activities that lawmakers could not forbid citizens generally but that they may declare to be incompatible with the role and work of police officers. Examples are *In re Lasswell,* 296 Or 121, 673 P2d 855 (1983), which held that a professional rule directed to prosecutors could validly restrict their comments on a pending case if it was narrowly limited to situations when a prosecutor intends or "knows or is bound to know that the statements pose a serious and imminent threat to the [factfinding] process," 296 Or at 126, and in *Cooper v. Eugene Sch. Dist. No. 4J,* 301 Or 358, 723 P2d 298 (1986), *appeal dismissed* 480 US 942 (1987), which held that a statute could validly restrict public school teachers' rights under Article I, sections 2 and 3, if the statute was limited to "circumstances when a teacher's dressing in accordance with the standards of his or her religion is truly incompatible with the school's commitment to maintaining for its students [an] atmosphere of religious freedom and neutrality," 301 Or at 380.

It is important to note that lawmakers may not simply attach the sacrifice of constitutional rights to public employment. The constitutional test is found not in an analogy between public employers and private employers but between the government as regulator and as manager. The relevant source is not the employment relationship but the incompatibility of otherwise privileged conduct with performance in one's role or function; for instance, the application of the disciplinary rule in *In re Lasswell* would apply to a lawyer retained as a city attorney or *ad hoc* prosecutor as well as to a regularly employed prosecutor.[1] In judging government constraints on the "incompatible" exercise of constitutional privileges, it is immaterial whether a librarian, a driver, a nurse, or a security guard is employed in the private or in the public sector, unless (as with religious displays by public school teachers) the very fact of one's *public* role and function makes conduct incompatible that would not be incompatible with the same role or function in a private capacity.

---

[1] Another example might be the position of drug counselors like those in *Smith v. Employment Division,* 307 Or 68, 763 P2d 146 (1988), *cert granted* ____ US ____, 109 S Ct 1526 (1989), whose religious use of peyote government authorities might find incompatible with that role equally in private or in public employment. *See also Humphers v. First Interstate Bank,* 298 Or 706, 696 P2d 527 (1985) (medical services act limits licensed physician's freedom to disclose confidential patient information).

The proper test, therefore, is whether the state could require anyone engaged in similar work, private or public, to refrain from otherwise privileged activities; and if not, whether the particular restriction is justified by the specific public role of police officers. That is a difficult question. Perhaps the strongest arguments for insisting on a nonpolitical, at least a nonpartisan, police force may be drawn from the experience of countries where such forces (as well as other armed forces) have been instruments of the regime in power against its political opponents and where the authority of a regime sometimes rests on the political assent of these forces. Forestalling the abuse or perceived abuse of police power for political ends may justify some narrowly designed limitation on police officers' political activities. But such arguments must in the first instance be assessed by lawmakers; it is not for courts to invent such reasons in reviewing a law. *See Cooper v. Eugene Sch. Dist. No. 4J, supra,* 301 Or at 373. The law must specify expressly or by clear inference what "serious and imminent" effects it is designed to prevent. *See In re Lasswell, supra,* 296 Or at 126.

This court has wrestled with the problem closer to home, in phrasing the constraints of the Oregon Code of Judicial Conduct on political activities of judges. Thus, Canon 7 does not forbid "political activity" as such (defined in the canon as including to speak publicly, to raise or give funds, or to lend one's name to a political purpose or a political organization), but only when the activity produces one of four stated effects that the drafters considered incompatible with judicial office. One of these is that the activity "jeopardizes the confidence of the public or of government officials in the political impartiality of the judicial branch of government."[2] The effect therefore has to be assessed at the time of the political activity; it is not simply assumed at the time of enactment.

This approach, followed in *Lasswell* and in *Cooper,* may not be the final word on disqualification from a position or assignment on grounds of incompatible activities that otherwise are constitutionally privileged. It may, however, aid

---

[2] Canon 7(A)(4). Canon 7(B)(4) also forbids judges or candidates for judgeships to "make pledges or promises of conduct in office other than the faithful, impartial and diligent performance of the office," presumably on the premise that a judge must remain free to reach decisions on the merits untrammeled by prior campaign commitments.

toward the analysis of proposals put forward to prevent identifiable adverse effects of political activities.

I concur in the court's opinion.