Argued and submitted November 2, 1992, decision of Court of Appeals affirmed; judgment of circuit court reversed February 19, 1993

Ronald MOSER,
*Respondent on Review,*

*v.*

David B. FROHNMAYER,
in his official capacity as
Attorney General of the State of Oregon,
and The State of Oregon,
*Petitioners on Review.*

(CC 89C-12416; CA A67796; SC S39367)

845 P2d 1284

Rives Kistler, Assistant Attorney General, Salem, argued the cause for petitioners on review. With him on the petition were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Charles F. Hinkle, Portland, argued the cause and filed the response for respondent on review.

PETERSON, J.

Graber, J., filed an opinion concurring in part and specially concurring in part.

## PETERSON, J.

Article I, section 8, of the Oregon Constitution, provides that "[n]o law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever." The issue in this case is whether a law that prohibits the use of any "automatic dialing and announcing device to solicit the purchase of any realty, goods or services," ORS 759.290, violates Article I, section 8.

Plaintiff operates a chimney sweep business. He uses an automatic dialing and announcing device to solicit customers. He brought this action seeking a declaratory judgment that ORS 759.290 violates Article I, sections 8 and 20, of the Oregon Constitution, and the First and Fourteenth Amendments to the Constitution of the United States. ORS 759.290 provides in part:

"(1)  No person shall use an automatic dialing and announcing device to solicit the purchase of any realty, goods or services.

"(2)  Subsection (1) of this section does not apply to:

"(a)  The solicitation for funds by charitable or political organizations or institutions.

"* * * * *

"(3)  As used in this section:

"(a)  'Automatic dialing and announcing device' means equipment that dials programmed telephone numbers and plays a recorded message when the call is answered."

The trial court granted summary judgment to defendants, and the Court of Appeals reversed, holding that ORS 759.290 violates Article I, section 8, of the Oregon Constitution. *Moser v. Frohnmayer*, 112 Or App 226, 829 P2d 84 (1992). We affirm the decision of the Court of Appeals.

We address state law claims first. *State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983). Article I, section 8, forbids lawmakers from passing any law that "restrain[s] the free expression of opinion, or restrict[s] the right to speak, write, or print freely on any subject whatever."

"[Article I, section 8,] forecloses the enactment of any law written in terms directed to the substance of any 'opinion' or

any 'subject' of communication, unless the scope of the restraint is wholly confined within some historical exception that was well established when the first American guarantees of freedom of expression were adopted and that the guarantees then or in 1859 demonstrably were not intended to reach." *State v. Robertson*, 293 Or 402, 412, 649 P2d 569 (1982).[1]

■ We first consider whether the use of an automatic telephone dialing and announcing device that uses a recorded message is speech, within the meaning of Article I, section 8. The spoken word is our most popular and, to date, most significant form of communication. Newer forms of transmitting communications have arisen in the last 200 years. The telegraph (Cook, Wheatstone, Morse, 1837) enables people to communicate messages through an electrically charged wire by using a coded sound system. The telephone (Bell, 1876) carries the sound of one's voice through electrically charged wire. Radio (Marconi, 1895) carries signals through the air that may be received and transformed, by electronic means, into the sound of voices.

Audio recordings enable people to record their voices in another medium that may be replayed virtually anywhere. Most recently, people communicate with computers by voice, and computers replicate the human voice by technologically simulating its sound.

The Oregon Constitution protects communication by one person to another in words, whether that communication is by face-to-face speech, by person-to-person voice communication through wires or through the air, or by the computerized simulation of spoken words. The fact that one's means of expression is by a recording or simulation of one's voice does not alter its essential nature — speech.

ORS 759.290 properly may be viewed in several ways. Under the statute, automatic dialing and announcing

---

[1] Laws also may violate Article I, section 8, if they either (1) focus on forbidden effects, "but expressly prohibit[] expression used to achieve those effects," or (2) focus on forbidden effects without referring to expression, but nonetheless cannot be constitutionally applied without interfering with one's rights of free expression. *State v. Plowman*, 314 Or 157, 164, 838 P2d 558 (1992). *See also In re Fadeley*, 310 Or 548, 574-78, 802 P2d 31 (1990) (Unis, J., dissenting) (setting forth a method of analysis to determine whether a statute is constitutional under Article I, section 8, of the Oregon Constitution).

devices legally may be used to transmit any message, except messages that are a commercial attempt to sell realty, goods, or services. In this respect, it restricts expression because it is directed at a specific subject of communication, excluding some speech based on the content of the message. ORS 759.290 also contains a manner restriction (a limitation on telecommunication by automatic dialing and announcing devices but not by other means) and a classification restriction among users of telemarketing equipment (distinguishing between charitable and political entities, on the one hand, and all others).

■     Even though ORS 759.290 limits the substance of a subject of communication, it might nonetheless survive an Article I, section 8, challenge, if it is "wholly confined within some historical exception that was well established when the first American guarantees of freedom of expression were adopted and that the guarantees then or in 1859 demonstrably were not intended to reach." *State v. Robertson, supra,* 293 Or at 412; *In re Lasswell,* 296 Or 121, 124, 673 P2d 855 (1983). In *State v. Henry,* 302 Or 510, 515-25, 732 P2d 9 (1987), this court discussed what evidence is necessary to establish an historical exception. The court held that the "party opposing a claim of constitutional privilege" has the burden of demonstrating that a restriction on speech falls within an historical exception. *Id.* at 521. This is a heavy burden, "because the constitutional guarantee of free speech and press will not be overcome by the mere showing of some legal restraints on one or another form of speech or writing." *Ibid.*

*Henry* states: "The first part of the *Robertson* test for determining whether a restriction on expression comes within an historical exception focuses on whether the restriction was well established when the early American guarantees of freedom of expression were adopted * * *." *Id.* at 515. The second part of the *Robertson* test determines whether Article I, section 8, was intended to eliminate that restriction. *Id.* at 521.

The *Henry* court found that restrictions on "obscene expressions were not well established at the time the early freedoms of expression were adopted." *Id.* at 520. In addition, although pre-constitutional statutes made the possession of

obscene materials that tended to corrupt the morals of youths a crime,[2] the court found this insufficient to establish that "obscenity" fell within an historical exception to Article I, section 8. In reaching that conclusion, the court stated:

> "The territorial statute * * * certainly does not constitute any well-established historical exception to freedom of expression and that statute is in no way the equivalent of statutes punishing libel, perjury, forgery and the like." *Id.* at 522.

Defendants point out that commercial advertisements or solicitations historically were not protected by the First Amendment; from this they argue that there must have been an historical exception permitting states to limit commercial speech. They cite *Valentine v. Chrestensen*, 316 US 52, 62 S Ct 920, 86 L Ed 1262 (1942) (holding that a constitutional right to distribute commercial handbills cannot be acquired by printing protected speech on the reverse side); *Packer Corp. v. Utah*, 285 US 105, 52 S Ct 273, 76 L Ed 643 (1932) (holding that regulation of commercial advertising did not violate federal equal protection); and *Williams v. Arkansas*, 217 US 79, 30 S Ct 493, 54 L Ed 673 (1910) (same).[3] According to defendants, the significance of those cases is that, until *Valentine v. Chrestensen*, no one even argued that advertising or commercial solicitations were protected speech. This demonstrates, defendants argue, that it was well established that such speech was *not* subject to First Amendment protection.

Defendants contend that Oregon jurists shared the same understanding. *State v. Hollinshead*, 77 Or 473, 151 P 710 (1915), upheld a statute that made it a misdemeanor for any person to advertise a cure for sexual dysfunction or disease. In *Semler v. Oregon Dental Examiners*, 148 Or 50, 34

---

[2] Chapter 11, section 10, of the Oregon Territorial Code of 1853 ("Steamboat Code").

[3] Since *Valentine v. Chrestensen, supra,* the Supreme Court of the United States has recognized that commercial speech is protected under the First Amendment if it concerns a lawful activity and is not misleading. *Board of Trustees, S.U.N.Y. v. Fox*, 492 US 469, 109 S Ct 3028, 106 L Ed 2d 388 (1989). A regulation of commercial speech will survive First Amendment scrutiny only if the regulation directly advances a substantial governmental interest and is not more extensive than necessary. This is a lesser level of protection than is applied to so-called "core" First Amendment speech. 492 US at 480.

P2d 311 (1934), *aff'd*, 294 US 608, 55 S Ct 570, 79 L Ed 1086 (1935), this court upheld a law prohibiting certain advertising by dentists. Defendants argue that, even though Article I, section 8, was not involved in *Hollinshead* and *Semler*, the decisions are evidence that, historically, advertising and commercial solicitation were excepted from Article I, section 8, protection.

In effect, defendants are contending that, because no one had, before those decisions or incident to those decisions, asserted that commercial solicitations are subject to Article I, section 8, protection, such solicitations are not subject to Article I, section 8, protection. The cases cited by defendants lend little support to the notion that restrictions on advertising or commercial solicitations were well established when the "first American guarantees of freedoms of expression were adopted." *State v. Robertson, supra*, 293 Or at 412. As in *State v. Henry, supra*, defendants have not established an historical exception. ORS 759.290 does not fit within an historical exception.

■ Defendants also assert that the legislature can regulate solicitations and that ORS 759.290 is a permissible regulatory statute. They argue that, if a law is directed at secondary or invasive effects of communicative activity, government is not precluded from recognizing an exception for political or charitable speech without making the same exception available to commercial advertisers. Defendants rely on *City of Hillsboro v. Purcell*, 306 Or 547, 556, 761 P2d 510 (1988), in which this court struck down an ordinance that prohibited all door-to-door solicitations. The *Purcell* opinion states that "[a] city may yet choose to regulate, rather than totally proscribe, door-to-door solicitations." *Ibid.* In a footnote, the court stated that "the First Amendment would forbid an all-out ban on door-to-door solicitations by charitable, religious or political groups." *Id.* at 555 n 7 (citing *Schaumburg v. Citizens for Better Environ.*, 444 US 620, 100 S Ct 826, 63 L Ed 2d 73 (1980)). Defendants contend that this footnote suggests that the ordinance in *Purcell* was held overbroad because it prohibited all solicitations, including political and charitable solicitations. Defendants further contend that, because ORS 759.290 exempts only solicitations by "charitable or political organizations," this statute is valid.

The *Purcell* decision does not control this case. That opinion expressly pointed out that the city ordinance there involved "does not by its terms prohibit speech." 306 Or at 555. The statute here involved does.

4.     A statute may be valid if "the focus of the enactment, as written, is on an identifiable actual effect or harm that may be proscribed, rather than on the communication itself." *In re Fadeley*, 310 Or 547, 576, 802 P2d 31 (1990) (Unis, J., dissenting) (summarizing the holdings of *State v. Moyle*, 299 Or 691, 695, 705 P2d 740 (1985), and *City of Portland v. Tidyman*, 306 Or 174, 188, 759 P2d 242 (1988)); *accord State v. Plowman*, 314 Or 157, 164, 838 P2d 558 (1992); *State v. Robertson, supra*, 293 Or at 416-17. To be valid as a law that focuses on a harmful effect of speech, the law must "specify expressly or by clear inference what 'serious and imminent' effects it is designed to prevent." *Oregon State Police Assn. v. State of Oregon*, 308 Or 531, 541, 783 P2d 7 (1989) (Linde, J., concurring) (quoting *In re Lasswell, supra*, 296 Or at 126), *cert den*, 111 S Ct 44, 112 L Ed 2d 20 (1990); *accord City of Portland v. Tidyman, supra*, 306 Or at 188 n 12.

In *State v. Plowman, supra*, this court upheld, against a challenge under Article I, section 8, a statute that made it a crime for two or more persons, acting together, to "[i]ntentionally, knowingly, or recklessly cause physical injury to another because of their perception of that person's race, color, religion, national origin or sexual orientation." ORS 166.165(1)(a)(A). The statute involved in *Plowman* was upheld because the law did not punish the expression of opinion; it "proscribes a forbidden effect." 314 Or at 165. ORS 759.290 proscribes a type of communication rather than identifying a forbidden effect. It is directed at speech itself, not toward the prevention of an identified actual effect or harm.[4]

If the legislature identifies harmful *effects* of automated telephone solicitations that may be proscribed, it must proscribe those effects by enacting a law that identifies and focuses on those effects. *State v. Plowman, supra*, 314 Or at

---

[4] Plaintiff also asserts invalidity under Article I, section 20, of the Oregon Constitution, and under the First and Fourteenth Amendments to the Constitution of the United States. Because of our holding that the statute violates Article I, section 8, we need not, and do not, decide those issues.

164; *In re Fadeley, supra,* 310 Or at 574-78 (Unis, J., dissenting). This is not such a law.[5]

ORS 759.290 is therefore invalid under Article I, section 8. The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed.

**GRABER, J.,** concurring in part and specially concurring in part.

I agree with the result that the majority reaches, but not with its reasoning.[1] For that reason, I write separately.

Plaintiff argues that ORS 759.290 violates Article I, section 8, of the Oregon Constitution. Article I, section 8, provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

ORS 759.290 provides in pertinent part:

"(1)   No person shall use an automatic dialing and announcing device to solicit the purchase of any realty, goods or services.

"(2)   Subsection (1) of this section does not apply to:

"(a)   The solicitation for funds by charitable or political organizations or institutions.

"* * * * *

"(3)   'Automatic dialing and announcing device' means equipment that dials programmed telephone numbers and plays a recorded message when the call is answered."

In *State v. Plowman,* 314 Or 157, 163-64, 838 P2d 558 (1992), this court summarized the method of analysis under Article I, section 8:

---

[5] We note the Telephone Consumer Protection Act of 1991. 47 USCA § 227 (1991). This federal statute and its accompanying federal rules became effective on December 20, 1992, and, in essence, regulate "commercial telemarketing solicitations" using an "automatic telephone dialing system" to call residences. 47 CFR § 64.1200(a)(2); 47 CFR § 64.1200(c)(1). Our decision considers these federal laws only for the limited purpose of determining whether the laws render this appeal moot. This case is not moot, because the federal rules are not as broad as ORS 759.290, which prohibits such calls to both residences and businesses.

[1] I agree with the majority that this case is not moot, for the reasons that the majority gives, and, thus, concur in that part of the opinion. 315 Or at 380 n 5.

"In *State v. Robertson*, [293 Or 402, 649 P2d 569 (1982)], this court established a framework for evaluating whether a law violates Article I, section 8. First, the court recognized a distinction between laws that focus on the *content* of speech or writing and laws that focus on the pursuit or accomplishment of *forbidden results*. 293 Or at 416-17. The court reasoned that a law of the former type, a law 'written in terms directed to the substance of any "opinion" or any "subject" of communication,' violates Article I, section 8,

" 'unless the scope of the restraint is wholly confined within some historical exception that was well established when the first American guarantees of freedom of expression were adopted and that the guarantees then or in 1859 demonstrably were not intended to reach.' *Id.* at 412.

"Laws of the latter type, which focus on forbidden results, can be divided further into two categories. The first category focuses on forbidden effects, but expressly prohibits expression used to achieve those effects. The coercion law at issue in *Robertson* was of that category. *Id.* at 417-18. Such laws are analyzed for overbreadth:

" 'When the proscribed means include speech or writing, however, even a law written to focus on a forbidden effect * * * must be scrutinized to determine whether it appears to reach privileged communication or whether it can be interpreted to avoid such "overbreadth." '*Ibid.*

"The second kind of law also focuses on forbidden effects, but without referring to expression at all. Of that category, this court wrote:

" 'If [a] statute [is] directed only against causing the forbidden effects, a person accused of causing such effects by language or gestures would be left to assert (apart from a vagueness claim) that the statute could not constitutionally be applied to his particular words or other expression, not that it was drawn and enacted contrary to article I, section 8.' *Id.* at 417." (Emphasis in original; footnote omitted.)

Our first task, then, is to determine whether ORS 759.290 is "written in terms directed to the substance of any 'opinion' or any 'subject' of communication." *State v. Robertson, supra*, 293 Or at 412. It is here that I part company with the majority. It plainly is true that a recording or simulation of a person's voice, conveying a message through words, is

speech. It also is correct that Article I, section 8, protects the substance of any speech — the merchant's as well as the mayor's. But, ORS 759.290 is not directed to the substance of the merchant's recorded speech in the way that our previous cases have contemplated when declaring laws to be facially invalid under the first *Robertson* category.

The majority does not declare ORS 759.290 to be "facially invalid" in so many words. However, the majority asserts that the statute focuses on the content of speech and then analyzes whether an historical exception saves the statute nonetheless. Under *State v. Robertson, supra*, that line of inquiry applies only to a statute in the first of the three enumerated categories, and it should lead to a conclusion that the law in question is facially invalid. *See State v. Henry*, 302 Or 510, 732 P2d 9 (1987) (applying that analysis to conclude that a statute making dissemination of obscene material a crime violates Article I, section 8). In my view, the majority's first-category analysis is beside the point.

ORS 759.290 is a classic restriction on the means or manner of communication. Plaintiff may say whatever he wants to say to prospective customers. There is no restriction on the content of his speech. Moreover, plaintiff may deliver his message on the telephone; he may use a recorded message that begins to play when someone answers the telephone at the other end of the line; and he may deliver the message at any time. The same words, from the same person, to the same person, at the same time, and at the same place, remain. *Compare State v. Henry, supra* (invalidating obscenity law as directed at the substance of speech and not covered by an historical exception). The only prohibition with respect to plaintiff is against his use of a specified mechanical device, *"equipment that dials programmed telephone numbers and* plays a recorded message when the call is answered." ORS 759.290(1), 759.290(3)(a) (emphasis added).

The majority decides that this "manner" restriction is transformed into a "content" restriction for only one reason: the manner restriction applies to messages that "solicit the purchase of any realty, goods or services," ORS 759.290(1), but not to other messages. A selective manner restriction is still a manner restriction, however, and not

something else. It may not be a *valid* manner restriction, but that is a different question.

The majority's analysis is at odds with *City of Hillsboro v. Purcell*, 306 Or 547, 761 P2d 510 (1988), which clearly shows that a selective time, place, or manner restriction is not necessarily a content restriction. There, an ordinance prohibited uninvited visits to residences "for the purpose of soliciting orders for the sale of goods." 306 Or at 550.

> "Although facially valid, the ordinance focuses on one type of entry — for the purpose of selling merchandise. Selling is a form of communicative behavior that includes speech and may involve goods that are protected expression. Because speech is implicated, we must examine the ordinance for overbreadth." *Id.* at 555.

This court held that the ordinance was overbroad, because it was "far more than a regulation limited to and contained by the consequences the law seeks to prevent." *Id.* at 556.

*Purcell* demonstrates that a selective time, place, and manner restriction is not a content restriction — that is, is not facially invalid — merely because the restriction is selective. Rather, a selective time, place, and manner restriction belongs in the second of the three categories enumerated in *Robertson*: laws that purport to focus on effects but that expressly prohibit expression used to achieve those effects. Such a law must be analyzed for overbreadth.

In addition to departing from our precedent, the majority's reasoning might encroach on the proper analysis in other cases. An example will demonstrate why. ORS 260.695(2) prohibits electioneering near a polling place:

> "No person, within any building in which a polling place is located or within 100 feet measured radially from any entrance to the building, shall do any electioneering, including circulating any cards or hand bills, or soliciting signatures to any petition. No person shall do any electioneering by public address system located more than 100 feet from an entrance to the building but capable of being understood within 100 feet of the building. The electioneering need not relate to the election being conducted."

That is a time, place, and manner restriction on speech. It also is a content-selective time, place, and manner restriction; petitioner could solicit customers for his chimney sweep business within 100 feet of a polling place, for example.

Under the majority's analysis, ORS 260.695(2) is directed at the substance of speech, because it restricts some subjects of communication (electioneering) but not others. In my view, however, that statute is a law focusing on a forbidden effect (disruption of voting), which expressly prohibits expression used to achieve that effect. Under *State v. Robertson, supra,* 293 Or at 417-18, such a law falls into the second analytical category; it is not facially invalid, but it must be scrutinized to be sure that it is not overbroad. The selective nature of the time, place, and manner restrictions in ORS 260.695(2) is simply one factor to consider in that scrutiny.[2]

Likewise, here, ORS 759.290 is not impermissibly directed to the substance of speech. Instead, it purports to be directed to an identifiable effect (presumably the unwanted, inconvenient, repeated, or prolonged intrusion into the privacy and quiet of the persons called by use of an automated dialing device), with an express prohibition in the statute that relates to expression.

ORS 759.290 must, but fails to, satisfy the constitutional requirements for a law of that kind. First, such a statute must, expressly or by clear implication, identify a substantial harm that the law seeks to ameliorate. *See City of Portland v. Tidyman,* 306 Or 174, 188-91, 759 P2d 242 (1988) (illustrating principle); *Oregon State Police Assn. v. State of Oregon,* 308 Or 531, 541, 783 P2d 7 (1989) (Linde, J., concurring) (stating principle), *cert den,* 498 US 810, 111 S Ct 44, 112 L Ed 2d 20 (1990). This law does not do so. Second, the statute must avoid overbreadth. *Ibid.* ORS 759.290 is overbroad, because it restricts speech directed to people who wish to receive commercial messages, as well as to people who do not; speech at convenient times of day, as well as inconvenient times of day; one-time messages, as well as repeated messages; brief automated calls as well as long ones — in short,

---

[2] I need not and do not express any opinion concerning the constitutionality of ORS 260.695(2). My point is only that it should be analyzed for overbreadth under the second category identified in *State v. Robertson, supra.*

speech that does not intrude unduly, as well as speech that does.

Because ORS 759.290 fails adequately to identify the harm sought to be cured and is overbroad, it violates Article I, section 8. Accordingly, I concur specially.