Argued and submitted January 29, reversed April 1, reconsideration denied July 1, petition for review allowed September 29, 1992 (314 Or 391)

Ronald MOSER,
*Appellant,*

*v.*

David B. FROHNMAYER,
and the State of Oregon,
*Respondents.*

(89C-12416; CA A67796)

829 P2d 84

Charles F. Hinkle, Portland, argued the cause for appellant. With him on the briefs were Jacklyn M. Bartruff, Laura J. Mazel and ACLU Foundation of Oregon, Portland.

Rives Kistler, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

WARREN, P. J.

## WARREN, P. J.

Plaintiff brought this declaratory judgment action challenging the constitutionality of ORS 759.290. He appeals from a summary judgment for defendants. We reverse.

■ Plaintiff is a chimney sweep who uses a "telemarketing computer" to advertise his service. The computer automatically and systematically dials telephone numbers in plaintiff's service area. When it connects with someone who answers "hello," it plays a recorded message concerning plaintiff's business. ORS 759.290 provides:

"(1) No person shall use an automatic dialing and announcing device to solicit the purchase of any realty, goods or services.

"(2) Subsection (1) of this section does not apply to:

"(a) The solicitation for funds by charitable or political organizations or institutions.

"(b) Contacts between persons with an existing business relationship.

"(3) As used in this section:

"(a) 'Automatic dialing and announcing device' means equipment that dials programmed telephone numbers and plays a recorded message when the call is answered.

"(b) 'Existing business relationship' means a preexisting and continuing course of dealing between parties involving the purchase or sale of realty, goods or services."

Plaintiff's use of the telemarketing computer falls squarely within the proscription of that statute and is not saved by either of the exceptions.

Plaintiff's principal challenge to ORS 759.290 is that it violates Article I, section 8, of the Oregon Constitution,[1] because it is an impermissible content-based restriction on speech. Specifically, he contends that, because the law only prohibits the use of automatic telemarketing devices for "commercial" solicitations, it impermissibly discriminates

---

[1] Article I, section 8, of the Oregon Constitution provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

against speech on a particular subject. To support his argument, plaintiff relies on *Ackerley Communications, Inc. v. Mult. Co.,* 72 Or App 617, 623, 696 P2d 1140 (1985), *rev dismissed* 303 Or 165, 734 P2d 885 (1987), where we held:

"An ordinance that imposes a regulation on one kind of nonabusive speech and no regulation on others, because of the difference in their content, is inconsistent with Article I, section 8." (Footnote omitted.)

In that case, we struck down an ordinance that banned commercial, but not noncommercial, outdoor advertising, because the state has "no constitutionally acceptable interest in regulating commercial and noncommercial expression differently because of the content." 72 Or App at 625.

The regulation challenged in *Ackerley*, placed a time, place and manner restriction on commercial speech that it did not place on noncommercial speech. So, too, does ORS 759.290. Accordingly, defendants concede that, if *Ackerley* is still the law, the statute must fall. However, defendants contend that *Ackerley* was implicitly overruled by subsequent decisions from the Oregon Supreme Court.

Defendants first rely on *City of Portland v. Tidyman*, 306 Or 174, 759 P2d 242 (1988), where the court considered whether a city ordinance that regulated the location of stores that sold sexually oriented, and in some cases obscene, materials violated Article I, section 8. The defendant merchants argued that the regulation was an impermissible content-based time, place and manner restriction. The court apparently agreed, because it rejected the city's argument that the ordinance was "concerned with the 'effect' of speech, not the speech itself." 306 Or at 184.

In concluding that the ordinance was unconstitutional, the court clarified the process for analyzing laws challenged as violating Article I, section 8. The court first set out the general rule that section 8

"forbids the enactment of a law directed in terms against *any subject of speech, writing, or printing* that cannot be shown to fall within an old or modern version of a well-established historical exception that the constitutional guarantees demonstrably were not meant to displace." 306 Or at 179. (Emphasis supplied.)

The court then emphasized that a time, place and manner restriction that focuses on the undesired effects of speech, if it is within the legislature's power to proscribe such effects, is not a law directed "in terms against any subject of speech." 306 Or at 191; *see also In re Fadeley*, 310 Or 548, 559, 802 P2d 31 (1990). Because the ordinance focused on the content of the materials purveyed, not on the effects of the purveyance, it failed that test.

■ *Tidyman* is a straightforward application of the simple rule that, unless the subject matter of a law falls within an historical exception, a content based restriction on speech is impermissible in Oregon. Only content- neutral time, place and manner regulations that focus on prohibitable effects of speech are permitted. However, the opinion contains some possibly inconsistent language:

> "This court has never held that an otherwise valid restriction must cover all or nothing, for instance that a city may not make evenhanded exceptions to an otherwise valid restriction against placing signs on utility poles, obstructing traffic for a civil rights commemoration, or using sound-trucks during a political campaign without having to make the same equally available to supporters of sports teams or to commercial advertisers." 306 Or at 183.

Defendants cite that passage as support for the proposition that commercial speech is entitled to less protection under Article I, section 8, than other "higher" forms of speech, such as political speech. That is how the U.S. Supreme Court views the scope of free speech protections under the First Amendment to the United States Constitution. *Ohralik v. Ohio State Bar Assn.*, 436 US 447, 98 S Ct 1912, 56 L Ed 2d 444 (1978). We do not read *Tidyman* to effect such a diminution in the protection afforded by Article I, section 8.

■ The quoted portion of *Tidyman* appears in a discussion distinguishing regulations of general applicability that incidentally restrict the exercise of a constitutional right from those that are specifically designed to curb the deleterious effects of the exercise of such rights. The analysis is based on the presumption that there will be an "otherwise valid restriction," *i.e.*, a restriction that does not offend the general

rule against content-based regulations or any other constitutional guarantee. Those regulations, if applied in a non-discriminatory manner, would not necessarily implicate Article I, section 8, because they would not be aimed at suppressing expressive activities. Nevertheless, the court explained that the state can grant exemptions from such laws to promote protected activities, provided that the exemptions are made in an even handed manner.

In that context, the quoted material merely explains that, if an exception from a valid regulation of general applicability is granted for a political demonstration, the state need not, as a matter of course, grant the same exception to a sports promoter. All that is required is equality of access to, or general applicability of, the exception. We read no more into the language than that. In sum, the analysis does not apply when a law is "flatly directed against one disfavored type of pictorial or verbal communication." 306 Or at 184.

*Tidyman* specifically eschewed any analytical approach that focuses on the "value" of the speech at issue. We view the court's refusal to engage in ranking and balancing as a rejection of that approach. It said:

"By omitting the supposed adverse effects as an element in the regulatory standard, the ordinance appears to consider the 'nuisance' to be the characteristics of the 'adult' materials rather than secondary characteristics and anticipated effects of the store. Such lawmaking is what Article I, section 8, forbids." 306 Or at 186.

Finding no support for defendants' position in *Tidyman*, we turn to *City of Hillsboro v. Purcell*, 306 Or 547, 761 P2d 510 (1988), where the court addressed whether a "Green River" anti-solicitation ordinance is constitutional under Article I, section 8. The precise ordinance at issue prohibited

"the practice of persons going in and upon private property or calling at residences * * * not having been requested or invited so to do * * * for the purpose of soliciting orders for the sale of goods, wares, merchandise and/or for the purpose of disposing of and/or peddling or hawking the same * * *." 306 Or at 550.

Relying on our decision in *Ackerley Communications, Inc. v. Mult. Co., supra*, we held that ordinance invalid, because it

prohibited only commercial speech. *City of Hillsboro v. Purcell*, 87 Or App 649, 652, 743 P2d 1119 (1987). However, the Oregon Supreme Court construed it to prohibit all solicitation, not just commercial solicitation.[2] The court then invalidated the ordinance on overbreadth grounds. 306 Or at 556.

In concluding that the ordinance was overbroad, the court said:

> "The ordinance is overbroad, not because it regulates solicitation for one purpose differently from another, but because it prohibits all solicitation for any purpose at any time. The ordinance as written is broad enough to preclude any person or group from approaching a door in a residential neighborhood to solicit financial support for any purpose *through the sale of merchandise*. This is far more than a regulation limited to and contained by the consequences the law seeks to prevent." 306 Or at 556. (Footnote omitted; emphasis supplied.)

Defendants read that to mean that the ordinance was overbroad, only because it prohibited religious and political solicitation in addition to commercial solicitation. We disagree with that. Instead, we view *Purcell* as an application of the *Tidyman* rule in the context of an overbreadth challenge.

A law is unconstitutional if it proscribes a constitutionally protected activity. *State v. Robertson*, 293 Or 402, 410, 649 P2d 569 (1982). All speech is constitutionally protected, unless it is an historically excepted form. 293 Or at 412. Nonetheless, a law can protect against the harmful effects of permitted speech, *City of Portland v. Tidyman*, *supra*, and it will withstand constitutional scrutiny, unless it sweeps too broadly in its attempt to eliminate those effects. In short, a law implicating the rights protected by Article I, section 8, is unconstitutional if it specifically prohibits protected speech or if it burdens expression but is not "limited to and contained by the consequences" that it seeks to prevent. The latter was the defect in the "Green River" ordinance.

Because the ordinance did "not by its terms prohibit speech * * * [i]t [was] not unlawful as an outright prohibition

---

[2] Defendants assert that the rejection of our analysis was an implicit rejection of our rule in *Ackerley*. We disagree. Because the court found that the ordinance did not discriminate on the basis of content, it merely found that our analysis was not applicable.

on speech." 306 Or at 555. Nevertheless, it sought to control an effect of speech, *i.e.*, fraud by unscrupulous and unethical solicitors. Because it burdened more expression than was necessary to control that effect, it was held to be overbroad.[3] Accordingly, we find no merit in defendants' contention that *City of Hillsboro v. Purcell, supra*, represents a departure from the court's admonition:

> "There is no basis under the Oregon Constitution to provide more protection to certain nonabusive communication based upon the content of the communication. Speech related to political issues or matters of 'public concern' is constitutionally equal to speech concerning one's employment or neighbors, so long as that speech is not an abuse of the right." *Bank of Oregon v. Independent News*, 298 Or 434, 439, 693 P2d 35 (1985).

In our view, neither *Tidyman* nor *Purcell* conflicts with our decision in *Ackerley Communications, Inc. v. Mult. Co., supra*, that different subjects of speech are not subject to different levels of protection under Article I, section 8. *See also Bank of Oregon v. Independent News, supra.* Because ORS 759.290 regulates commercial speech differently from other subjects of speech, it is unconstitutional.

Reversed.

---

[3] In *Northwest Advancement v. Bureau of Labor*, 96 Or App 133, 772 P2d 934, *rev den* 308 Or 315 (1989), we upheld regulations restricting the use of minors in door-to-door solicitation, because those regulations were limited to an effect of speech that the wage and hour laws seek to prevent.