Argued and submitted July 8, reversed November 4, 1992

CITY OF EUGENE,
*Respondent,*

*v.*

Norman Edward POWLOWSKI, Jr.,
*Appellant.*

(91-50040; CA A72083 (Control))

CITY OF EUGENE,
*Respondent,*

*v.*

Vernice Ann MOUG,
*Appellant.*

(91-50041; CA A72084)
(Cases Consolidated)

840 P2d 1322

Edmund J. Spinney, Eugene, argued the cause and filed the brief for appellants.

James E. Mountain, Jr., Salem, argued the cause for respondent. On the brief were Jens Schmidt and Harrang, Long, Watkinson, Arnold & Laird, P.C., Eugene.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

Warren, P. J., specially concurring.

## EDMONDS, J.

Defendants appeal from judgments in which the trial court found them guilty of violating a City of Eugene municipal ordinance that prohibits honking an automobile horn for purposes other than as a reasonable warning. They argue that the ordinance violates their right to free expression under Article I, section 8, of the Oregon Constitution. We reverse.

In January, 1991, protesters held demonstrations at the federal courthouse in Eugene in response to the Persian Gulf War. The protesters represented both anti-war and pro-war positions. Many of them carried signs that invited passing motorists to honk in support of their various positions. Defendants honked their vehicle horns while driving past the protesters and were cited for violating Eugene Municipal Code Section 5.005(1)(b). The ordinance adopts ORS 815.225, which provides, in part:

> "(1)   A person commits the offense of violation of use limits on sound equipment if the person does any of the following:
>
> "* * * * *
>
> "(b)   Uses a horn otherwise than as a reasonable warning or makes any unnecessary or unreasonably loud or harsh sound by means of a horn or other warning device."

At their trials, defendants argued that the language in the ordinance "uses a horn otherwise than as a reasonable warning" is facially unconstitutional or unconstitutional as applied to them. The court rejected their arguments and found them guilty.

■       Defendants assert that section 5.005(1)(b) is unconstitutional, because:

> "Horn-honking is a means of communication protected under Article I, Section 8. There is no historical exception that would allow governmental regulation of such expression despite the provisions of the Constitution. The statute proscribes the communication itself rather than the effect of the communication. It is therefore unconstitutional under Article I, Section 8."

The City of Eugene (city) responds that the ordinance does not violate Section 8, either facially or as applied, "because it

is not directed at speech. Rather, it is directed at the physical act of honking a horn * * * [and] is constitutional because it is a content-neutral time, place and manner regulation which focuses upon the effect of speech." City suggests that the ordinance is intended to protect the utility of the automobile horn as only a warning device.

Article I, section 8, provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

Section 5.005 is unconstitutional if it proscribes protected expression. All speech is constitutionally protected, unless it falls within an historical exception that the guarantee of freedom of expression was not intended to reach. *State v. Robertson*, 293 Or 402, 412, 649 P2d 569 (1982). In *Robertson*, the court said:

"[A]rticle I, section 8, prohibits lawmakers from enacting restrictions that focus on the content of speech or writing, either because that content itself is deemed socially undesirable or offensive, or because it is thought to have adverse consequences. * * * [L]aws must focus on proscribing the pursuit or accomplishment of forbidden results rather than on the suppression of speech or writing either as an end in itself or as a means to some other legislative end." 293 Or at 416.

■     Section 5.005 is not a law that focuses on the content of speech. It is directed against the sound made by a mechanical device. Laws that do not punish speech itself are still scrutinized for overbreadth if they focus on the effect of speech and prohibit the expression used to achieve the effect or if they focus on an effect of speech without reference to expression. *State v. Plowman*, 314 Or 157, 838 P2d 558 (1992). Section 5.005 is a law of the latter kind.

■     Causing a mechanical device to make a sound does not always constitute speech. *See, e.g., State v. Hibbard*, 110 Or App 335, 339, 823 P2d 989 (1991), *rev den* 313 Or 211 (1992). However, defendants honked their automobile horns to demonstrate support or disapproval of a political issue or a matter of public concern. If they had shouted their approval or disapproval from their automobiles, that expression would

be protected under Article I, section 8. Their expression is no less protected because it is manifested by a mechanical sound, unless there is an important public safety or health interest at stake. *See City of Portland v. Ayers*, 93 Or App 731, 735, 764 P2d 556 (1988), *rev den* 308 Or 79 (1989).

■ The authority of a city to enact reasonable legislation to regulate conduct thought to be detrimental to the public interest is well-recognized. *See City of Portland v. Gatewood*, 76 Or App 74, 79, 708 P2d 615 (1985), *rev den* 300 Or 477 (1986). A city has broad constitutional latitude in fashioning a content-neutral law that regulates the manner of expression, so long as the limitation is reasonable, *City of Portland v. Tidyman*, 306 Or 174, 759 P2d 242 (1988), but the limitation is unreasonable if it burdens expression that is otherwise constitutionally privileged. *City of Hillsboro v. Purcell*, 306 Or 547, 555, 761 P2d 510 (1988).

■ The ordinance restricts all horn honking for any purpose at any time except as a warning. For example, it is broad enough to make honking unlawful if a motorist honked his horn as a friendly greeting to a bystander as he drives by a residence or any other circumstance when honking is used as a form of communication. The ordinance is not limited to those circumstances when, because of noise or abuse, the public interest may be implicated. Because the ordinance regulates far more than the consequences of the conduct that the city argues that it is intended to prevent, it is unconstitutionally overbroad.

■ Although we have the authority to limit an overbroad law to the constitutional confines intended by its drafters, *see, e.g., State v. Moyle*, 299 Or 691, 705 P2d 740 (1985); *State v. Marker*, 21 Or App 671, 536 P2d 1273 (1975), the statute and our research into its legislative history does not reveal what boundaries the legislature would have considered had it recognized the constitutional infirmity of ORS 815.225(1)(b).[1] In *State v. Robertson, supra*, the court declined to impose

---

[1] ORS 815.225(1)(b) has its origins in the 1931 motor vehicle legislation. Or Laws 1931, ch 360, § 71. When the Motor Vehicle Code was compiled in 1953, the statute was numbered ORS 483.446. Subsequently, it was the subject of minor amendments in 1975 and 1979, and was renumbered in 1983. Or Laws 1983, ch 338, § 492.

judge-made limitations on a coercion statute to cure constitutional overbreadth. It said:

"We cannot substitute a wider set of exclusions [from the prohibition] for those knowingly chosen by the drafters of ORS 163.275, even assuming that such wider exclusions rather than narrower and more precise affirmative coverage are the chosen means to confine the statute within constitutional bounds. * * * It is, therefore, in the first instance a legislative responsibility to narrow and clarify the coverage of a statute so as to eliminate most apparent applications to free speech or writing, leaving only marginal and unforeseeable instances of unconstitutional applications to judicial exclusion." 293 Or at 436.

We must follow that reasoning. The ordinance violates Article I, section 8, and the trial court erred when it held to the contrary.

The special concurrence criticizes our method of analysis. It first contends that the ordinance is a content-based restriction that "prohibits an expressive act, except to communicate a favored message." 116 Or App at 193. That assertion seems to assume that all horn honking is intended to communicate. Common sense tells us otherwise.

■        Second, the concurrence takes us to task for using an over-breadth analysis after we conclude that the ordinance is directed at the effect of the sound of horn-honking. The special concurrence would adopt a wooden approach that the only claim that could be made by a defendant under these circumstances is that the statute could not be constitutionally applied to a defendant's words. It draws that proposition from *dicta* in *State v. Robertson, supra,* 293 Or at 417. The concurrence reads too much into that statement in *Robertson.* A statute may be unconstitutionally overbroad on its face *or* in its application. In *City of Portland v. Gatewood, supra,* the defendant argued that the ordinance in question was overbroad in that some of the conduct it proscribed was protected speech under Article I, section 8. We said:

"Once a law challenged under Article I, section 8, for overbreadth has been found to be constitutional as enacted, it must still be examined to see if 'it nevertheless might be applied in a manner that would violate Art I, § 8.' *State v. Spencer,* 289 Or 225, 228, 611 P2d 1147 (1980). That is, in

addition to its permissible proscriptions, does the ordinance reach otherwise protected behavior?" 76 Or App at 78.

At issue in *City of Hillsboro v. Purcell, supra,* was the constitutionality of a "Green River Ordinance" that regulated uninvited entries to private property for door-to-door sales. The court said that, because selling is a form of communicative behavior that implicates speech, the ordinance must be examined for overbreadth, even though on its face it did not prohibit speech. No particular words spoken by a salesman were at issue. The court looked only at the face of the ordinance and concluded that it was overbroad, because it precluded any person or group from approaching a door in a residential neighborhood to solicit financial support for any purpose through the sale of merchandise. We have used a similar method of analysis. Section 5.005 is overbroad on its face, because it is not limited to circumstances detrimental to the public interest.

Reversed.

**WARREN, P. J.,** specially concurring.

In *Moser v. Frohnmayer,* 112 Or App 226, 230, 829 P2d 84, *rev allowed* 314 Or 391 (1992), we reaffirmed that, "unless the subject matter of a law falls within an historical exception, a content based restriction on speech is impermissible in Oregon." The Oregon Supreme Court recently confirmed that rule in *State v. Plowman,* 314 Or 157, 838 P2d 558 (1992), where it held that the first step in evaluating whether a law violates Article I, section 8, is to determine if the law is directed at the content of speech. If it is, the law is invalid, unless its subject matter falls within an historical exception. *See also State v. Robertson,* 293 Or 402, 412, 649 P2d 569 (1982).[1]

Here, the ordinance is directed at the content of speech. It permits the use of a horn to communicate one message, a warning, but prohibits the use of a horn to communicate any other message. In that sense, it is no different than the statute in *Moser v. Frohnmayer, supra,* which permitted the use of a computer to communicate

---

[1] Plaintiff does not argue that the ordinance falls within an historical exception to Article I, section 8.

political and religious messages but prohibited the use of that same computer to communicate commercial messages. We held that that was an unconstitutional, content-based restriction on speech. Similarly, an ordinance that permits horn-honking to communicate one message but not another is an unconstitutional content-based restriction on speech. That is as far as our analysis needs to go.

The majority contends that the ordinance "is not a law that focuses on the content of speech," because "[i]t is directed against the sound made by a mechanical device." 116 Or App at 189. Apparently, the majority confuses this ordinance with the type of ordinance addressed in *City of Portland v. Ayers*, 93 Or App 731, 764 P2d 556 (1988), which prohibited the operation of a sound reproducing device so as to be plainly audible 50 feet or more from the device. That ordinance sought to prevent an effect of speech, annoying noise, regardless of the content of the speech. Although that may have been the city's purpose here, the ordinance is not directed at prohibiting that effect. Instead, it prohibits an expressive act, except to communicate a favored message. That is the core defect of a content-based regulation.

Apart from erroneously concluding that the ordinance is not content-based, the majority also improperly analyzes the other constitutional issues. If, as the majority contends, the ordinance is not a law that focuses on the content of speech, then it must be directed at effects. The majority concedes that. 116 Or App at 189. The way to analyze such laws is clear. If a law focuses on an effect and expressly prohibits expression used to achieve that effect, we examine the law for overbreadth. *State v. Plowman, supra*, 314 Or at 164. If the law focuses on an effect but does not refer to expression, a defendant can assert an "as applied" challenge:

> "[A] person accused of causing such effects by language or gestures would be left to assert (apart from a vagueness claim) that the statute could not constitutionally be applied to his particular words or other expression, *not that it was drawn and enacted contrary to article I, section 8.*" *State v. Robertson, supra*, 293 Or at 417. (Footnote omitted; emphasis supplied.)

*Accord*: *State v. Plowman, supra*, 314 Or at 164.

Although our ultimate inquiry when examining a law for overbreadth or "as applied" is the same, *i.e.*, whether the law reaches protected expression, the procedures and results of the analyses differ. Because an overbreadth challenge tests the facial validity of a law, a factual record is unnecessary and such challenges can, but need not, be raised pretrial.[2] If a law is overbroad, it is unconstitutional *in toto*, unless it can be construed not to reach protected expression. *State v. Robertson, supra*, 293 Or at 417.

In contrast, if a law does not on its face prohibit protected expression, a defendant can only assert that the law cannot be constitutionally applied under the factual circumstances.[3] Consequently, an as applied challenge can only be resolved on the basis of facts. If a court finds that, under the facts, a law cannot be constitutionally applied, then the law is necessarily construed not to apply in that situation. However, the law is not invalid *in toto*, because the law, on its face, is constitutional.

The majority contends that the ordinance is a law that focuses "on an effect of speech *without reference to expression*." 116 Or App at 189. (Emphasis supplied.) It then concludes that, because defendants honked their horns for an expressive purpose, the ordinance is overbroad. Because a law can only be overbroad if it refers to expression, the majority's conclusion is a *non sequitur*. At best, if the majority correctly concludes that the ordinance does not refer to expression, the ordinance is unconstitutional as applied. There is no reason, under an applied challenge, to discuss whether the ordinance is subject to a narrowing construction. If the ordinance is

---

[2] In *State v. Blocker*, 291 Or 255, 261, 630 P2d 824 (1981), the court said:

"[T]o the extent that an overbroad law forbids what may not constitutionally be forbidden, it is invalid as such *without regard to the facts in the individual case*." (Citation omitted; emphasis supplied.)

[3] In *State v. Spencer*, 289 Or 225, 228, 611 P2d 1147 (1980), the court said:

"If a law concerning free speech on its face violates this prohibition, it is unconstitutional; it is not necessary to consider what the conduct is in the individual case. If the law is not unconstitutional on its face, it nevertheless might be applied in a manner that would violate Art I, § 8. In this case the nature of the alleged conduct of the defendant is unknown to us and the question is whether the law on its face violates Art I, § 8."

invalid as applied, we should simply reverse defendants' convictions, because the ordinance is not invalid *in toto*.[4]

Nevertheless, because I believe that the ordinance is an unconstitutional content-based restriction on speech, I concur in the majority's result.[5]

---

[4] The majority contends that *City of Hillsboro v. Purcell*, 306 Or 547, 761 P2d 510 (1988), supports its view that "the ordinance must be examined for overbreadth, even though, on its face, it does not prohibit speech." 116 Or App at 192. That assertion flatly contradicts our recent analysis of that case in *Moser v. Frohnmayer, supra*, where we said:

"A law is unconstitutional if it proscribes a constitutionally protected activity. *State v. Robertson*, 293 Or 402, 410, 649 P2d 569 (1982). All speech is constitutionally protected, unless it is an historically [unprotected] form. 293 Or at 412. Nevertheless, a law can protect against the harmful effects of permitted speech, *City of Portland v. Tidyman*, [306 Or 174, 759 P2d 242 (1988)], and it will withstand constitutional scrutiny, unless it sweeps too broadly in its attempt to eliminate those effects. In short, a law implicating the rights protected by Article I, section 8, is unconstitutional if it specifically prohibits protected speech, or if it burdens expression, but is not 'limited to and contained by the consequences' that it seeks to prevent. The latter was the defect of the 'Green River' ordinance.

"Because the ordinance did 'not by its terms prohibit speech * * * [i]t [was] not unlawful as an outright prohibition on speech.' 306 Or at 555. Nevertheless, it sought to control an effect of speech, *i.e.*, fraud by unscrupulous and unethical solicitors. Because it burdened more expression than was necessary to control that effect, it was held to be overbroad." 112 Or App at 232.

That view of *Purcell* falls squarely within the analytical rubric explained in *Plowman* and *Robertson* and does not support the majority's analysis at all. Although the majority views that analytical method as *dictum*, I see it as settled doctrine that we lack the capacity to change. To the extent that *City of Portland v. Gatewood*, 76 Or App 74, 708 P2d 615 (1988), is inconsistent with that doctrine, it is wrong.

[5] Although I recognize that the state and its political subdivisions have a legitimate interest in preserving the utility of automobile horns as warning devices, that does not excuse the obligation to draft regulations that affect speech in a content-neutral fashion. Article I, section 8, does not permit legislative bodies or the courts to balance the importance of a state interest against the right of the people to speak freely on any subject whatsoever. That, however, does not preclude enactment of narrowly drawn, content-neutral regulations that courts can further narrow on an "as applied" basis.