CITY OF EUGENE,
*Respondent,*

*v.*

David Henry MILLER,
*Appellant.*

(91-50062, 91-50073; CA A75143 (Control), A75145)
(Cases Consolidated)

851 P2d 1142

Rebecca R. Davis, Eugene, argued the cause and filed the briefs for appellant.

Milo R. Mecham, Eugene, argued the cause for respondent. With him on the brief were William F. Gary, James E. Mountain and Harrang Long Watkinson Arnold & Laird, P.C., Eugene.

RICHARDSON, C. J.

Edmonds, J., dissenting.

## RICHARDSON, C. J.

In these consolidated appeals, defendant seeks reversal of his convictions, pursuant to ORS 221.350, for violating section 4.860(d) of the Eugene Code by selling "joke books" on a city sidewalk. That code provision makes it an offense to

"[s]et up or operate a vehicle, stand or place for the display or sale of merchandise, or sell, vend, or display for sale an article in the streets or on the sidewalks or in doorways or stairways of business houses, or in any other place where such activity causes congregation and congestion of people or vehicles on the streets or sidewalks."

Section 3.338 of the code establishes a license requirement and licensing procedures for sidewalk vending but, under subsection (e), licenses can only be issued for the sale of "food, beverages, flowers or balloons." Defendant did not have a license and, apparently, had not applied for one.[1] He contends that section 3.338(e) violates the equal protection, the equal privileges and immunities and the free speech provisions of the state and federal constitutions. He assigns error to the denial of his demurrer, his motion to dismiss and his motion for judgment of acquittal, through which he raised the constitutional arguments.

■ The city first contends that we lack jurisdiction because, under ORS 221.360, our review is limited to issues "involving the constitutionality of the * * * ordinance under which the conviction was obtained." Defendant was convicted under section 4.860(d), but his constitutional challenge focuses on section 3.338. Hence, the city maintains, defendant does not come within the jurisdictional limitation of ORS 221.360. That argument is analogous to one addressed in the concurring opinion in *City of Portland v. Ayers*, 93 Or App 731, 764 P2d 556 (1988), *rev den* 308 Or 79 (1989). There, the defendant was charged under a provision of the city code that essentially duplicated a second provision, except that the latter contained an exemption procedure for which the defendant was not facially ineligible and of which he had not availed himself. Responding to the proposition

---

[1] We attach no significance to that fact because, as a matter of law, he was ineligible for a license for the very reason that he maintains makes the ordinance unconstitutional.

that the second provision and the possible availability of an exemption were irrelevant to the appeal from the conviction under the first provision, the concurrence stated:

"In my view, exactly the opposite conclusion follows. The proper approach is to read the provisions *in pari materia*. When they are so read, any overbreadth in section 14.24.160 is cured by the variance and exemption procedures that Title 18 establishes. Given the fact that their substantive regulations are materially identical, it is untenable to assume, as the dissent appears to do, that a person who seeks and obtains a variance under section 18.14.020 would or could be prosecuted under section 14.24.160." 93 Or App at 742.

Similarly, in this case, the licensing provision and the inculpating provision are inseparable. It is untenable to assume that the city would or could prosecute a person for carrying on an activity that it has licensed. Accordingly, defendant's challenge to section 3.338, in effect, involves the constitutionality of an ordinance that provides an exemption to prosecution. It is *in pari materia* with the ordinance under which he was convicted. We decline to interpret the jurisdictional limitation in ORS 221.360 as grudgingly as the city does, or as defeating our jurisdiction over this appeal.

The city also maintains, in support of its jurisdictional argument:

"Defendant has assumed that, without offering proof, he can challenge EC § 3.338 during an appeal of a conviction for violating EC § 4.860(d). The evidence offered by defendant, however, shows that the ordinances are not so linked that a challenge to EC § 4.860 is also a challenge to EC § 3.338. Eugene Code § 3.337 provides that EC § 3.338 is not the only method to obtain authorization to vend on City sidewalks. During the trial, defendant himself testified that he regularly sells his products on City sidewalks during the 'Saturday Market.' These sales are legally authorized by the City. Defendant has not come forward with any evidence that he has been denied a permit issued pursuant to EC § 3.338.[4]

"[4] Defendant's counsel stated during defendant's trial that she wished to introduce evidence that defendant had not been able to obtain a license. The trial court on its own motion questioned the relevance of that evidence and ruled

that it would not be admitted. Defendant has not assigned that ruling as an error for appeal."

That point, if correct, might have bearing on the substantive resolution of defendant's challenge to the ordinance and, interestingly, the city does not repeat the point in its argument on the merits. However, the point does not change the fact that defendant *does* challenge the constitutionality of the ordinance. We have jurisdiction.

The city next argues that neither the demurrer nor the motion to dismiss were proper or effective procedural vehicles for raising the contentions that defendant makes. Whether that is correct we need not decide, because there is no such problem with the presentation of the constitutional issues through a motion for judgment of acquittal, and defendant made the same arguments below and here in connection with the ruling on that motion as well as the other rulings that he assigns as error. We turn to the merits.

■ Defendant relies on *City of Hillsboro v. Purcell*, 306 Or 547, 761 P2d 510 (1988), and contends that the limitation on the types of goods for which street vending may be licensed allows the criminal ordinance to be applied against protected expression. Therefore, he asserts, the ordinance is overbroad and violates Article I, section 8.

At issue in *Purcell* was the constitutionality of a city ordinance that forbade and criminalized door-to-door solicitation for the purpose of selling goods, wares or merchandise. The court held that the ordinance was overbroad under Article I, section 8. It explained:

> "Although facially valid, the ordinance focuses on one type of entry — for the purpose of selling merchandise. Selling is a form of communicative behavior that includes speech and may involve goods that are protected expression. Because speech is implicated, we must examine the ordinance for overbreadth.

> "The parties debate the activities the ordinance prohibits. The city argues that the ordinance prohibits only solicitation by commercial enterprises and exempts the same activities if carried out by community, religious, charitable or political entities. The minutes of the city council meeting at which the ordinance was adopted do not show any distinction or exception for solicitations for these purposes or for sales of

books, magazines, or newspapers. Councillors were told, and the council's legislative 'findings' preceding the prohibitory language of the ordinance reflect, only that the ordinance was designed primarily to control fraud by unscrupulous and unethical solicitors.

"The ordinance is overbroad, not because it regulates solicitation for one purpose differently from another, but because it prohibits all solicitation for any purpose at any time. The ordinance as written is broad enough to preclude any person or group from approaching a door in a residential neighborhood to solicit financial support for any purpose through the sale of merchandise. This is far more than a regulation limited to and contained by the consequences the law seeks to prevent." 306 Or at 555-56. (Footnotes omitted.)

We conclude that the same is true here.

For a number of reasons, we disagree with the dissent's and the city's attempts to distinguish *Purcell*. The overbreadth issue in *Purcell* and the one here are not rendered materially different by the fact that the Hillsboro ordinance prohibited all door-to-door solicitations, while the ordinance in this case allows the sidewalk sale of four types of merchandise. The critical fact is not that the Eugene ordinance allows *some* sales, but that it does not allow the sale of *defendant's books*. It therefore reaches protected expression in essentially the same way that the Hillsboro ordinance did. Like that ordinance, this legislation is not "contained by the consequences" that it seeks to prevent. The very fact that it allows some sales, while prohibiting defendant's, demonstrates that it reaches his expression, without applying the same prohibition to other sales that are equally offensive to the city's regulatory objective of assuring that the streets and sidewalks are available for their principal purposes.

The city and the dissent appear to posit that the city may regulate the sidewalk sales of different commodities differently, because the ordinance regulates effects of speech rather than speech itself. It is true, as a general proposition, that regulation of effects of speech is permissible under Article I, section 8. However, as both the majority and the specially concurring opinion in *Moser v. Frohnmayer*, 315 Or 372, 845 P2d 1284 (1993), make clear, legislative regulations

of the effects of speech "must, expressly or by clear implication, identify a substantial harm that the law seeks to ameliorate," 315 Or at 384 (Graber, J., specially concurring), and "must proscribe those effects by * * * a law that identifies and focuses on those effects." 315 Or at 379.

It *may* be that the city's legislation identifies a harmful effect, but nothing in it addresses or implies why the sale of joke books gives rise to that effect in any way that the sale of balloons does not. Accordingly, the city's prohibition does not proscribe or focus on an effect; it proscribes the sale of particular commodities, including joke books, but allows the sale of others. The dissent is correct in its premise that different *activities* may be regulated differently under Article I, section 8. This ordinance, however, does not do so; rather, it regulates different exercises of the *same* commercial and communicative *activity* differently, on the basis of what is sold and communicated. That content-based regulation is what Article I, section 8, prohibits above all else. *See, e.g., Moser v. Frohnmayer, supra.* It cannot be relied on by the city to save its ordinance as one that merely regulates the effects of speech.

For the same reason, the dissent does not succeed in demonstrating that the ordinance is a legitimate time, place and manner regulation. We said in *Ackerley Communications, Inc. v. Mult. Co.*, 72 Or App 617, 624, 696 P2d 1140 (1985), *rev dismissed* 303 Or 165, 734 P2d 885 (1987):

"A content-based distinction in the way different kinds of constitutionally equal speech are regulated cannot be salvaged by the fact that the regulation restricts only the time, place and manner of engaging in the expression that has been selected for regulation."

In *Moser v. Frohnmayer, supra*, as we read it, the principal disagreement between the majority and the special concurrence was over that precise question. The majority took the position that we had earlier taken in *Ackerley*, and the special concurrence expressed the opposite view.[2] We are required to follow the holding of the majority.

---

[2] Although the basis for our decision makes it unnecessary for us to reach any issues under the First Amendment, the United States Supreme Court's recent decision in *City of Cincinnati v. Discovery Network, Inc.*, 507 US ___, 113 S Ct 1505, 123 L Ed 2d 99 (1993), is nevertheless of interest. There, the city imposed regulations that had the effect of banning newsracks that dispensed commercial publications,

while allowing newsracks through which non-commercial publications were disseminated. In holding that the regulation violated the First Amendment, the Court rejected several of the city's arguments that were similar to ones made by the city here. It said:

"The city argues that there is a close fit between its ban on newsracks dispensing 'commercial handbills' and its interest in safety and esthetics because every decrease in the number of such dispensing devices necessarily effects an increase in safety and an improvement in the attractiveness of the cityscape. In the city's view, the prohibition is thus *entirely* related to its legitimate interests in safety and esthetics.

"We accept the validity of the city's proposition, but consider it an insufficient justification for the discrimination against respondents' use of newsracks that are no more harmful than the permitted newsracks, and have only a minimal impact on the overall number of newsracks on the city's sidewalks. The major premise supporting the city's argument is the proposition that commercial speech has only a low value. Based on that premise, the city contends that the fact that assertedly more valuable publications are allowed to use newsracks does not undermine its judgment that its esthetic and safety interests are stronger than the interest in allowing commercial speakers to have similar access to the reading public.

"We cannot agree. In our view, the city's argument attaches more importance to the distinction between commercial and noncommercial speech than our cases warrant and seriously underestimates the value of commercial speech.
"* * * * *

"The city has asserted an interest in esthetics, but respondent publishers' newsracks are no greater an eyesore than the newsracks permitted to remain on Cincinnati's sidewalks. Each newsrack, whether containing 'newspapers' or 'commercial handbills,' is equally unattractive. * * * As we have explained, the city's primary concern, as argued to us, is with the aggregate number of newsracks on its streets. On that score, however, all newsracks, regardless of whether they contain commercial or noncommercial publications, are equally at fault. In fact, the newspapers are arguably the greater culprit because of their superior number.
"* * * * *

"The Court has held that government may impose reasonable restrictions on the time, place or manner of engaging in protected speech provided that they are adequately justified ' "without reference to the content of the regulated speech." ' * * * The city contends that its regulation of newsracks qualifies as such a restriction because the interests in safety and esthetics that it serves are entirely unrelated to the content of respondents' publications. Thus, the argument goes, the *justification* for the regulation is content-neutral.

"The argument is unpersuasive because the very basis for the regulation is the difference in content between ordinary newspapers and commercial speech. * * *

"* * * We agree with the city that its desire to limit the total number of newsracks is 'justified' by its interest in safety and esthetics. The city has not, however, limited the number of newsracks; it has limited (to zero) the number of newsracks *distributing commercial publications*. As we have explained, there is no justification for that particular regulation other than the city's naked assertion that commercial speech has 'low value.' It is the absence of a neutral justification for its selective ban on newsracks that prevents the city from defending its newsrack policy as content-neutral.

We hold that the Eugene ordinance violates Article I, section 8. It is unnecessary to reach defendant's other arguments.[3]

Reversed on both appeals.

**EDMONDS, J.,** dissenting.

The majority holds that the City of Eugene Ordinance section 4.860(d) which prohibits the sale of merchandise on a city street or sidewalk is unconstitutionally overbroad and violates Article I, section 8. It is inconceivable to me that a city cannot lawfully prohibit vendors from setting up places to sell merchandise in the middle of a street or sidewalk or regulate such activities in the light of the city's authority to prevent potential harm to the public. The majority's conclusion strips bare the city's ability to control commercial activity in its streets and on its sidewalks.

Eugene Code section 4.860, provides, in part:

"Unless otherwise authorized in this code, no person shall:

"* * * * *

"(d) Set up or operate a vehicle, stand or place for the display or sale of merchandise, or sell, vend, or display for sale an article in the streets or on the sidewalks or in the

---

"* * * * *

"In sum, the city's newsrack policy is neither content-neutral nor, as demonstrated in Part III, *supra,* 'narrowly tailored.' Thus, regardless of whether or not it leaves open ample alternative channels of communication, it cannot be justified as a legitimate time, place, or manner restriction on protected speech." 507 US at ___, 123 L Ed 2d at 109-17. (Emphasis in original; citations omitted.)

The dissent quotes *Purcell* as stating that "governments can regulate [commercial speech] to a greater degree and for different purposes than other protected speech." 306 Or at 553. That statement was a summary of First Amendment jurisprudence, not an interpretation of Article I, section 8, and the substance of what it said about federal law may not survive *City of Cincinnati.*

[3] The court also said in *Purcell:*

"The city impermissibly has prohibited all persons from approaching people in their homes at any time to sell merchandise. We do not suggest that the city could not place reasonable limitations on door-to-door solicitations. The city may yet choose to regulate, rather than totally proscribe, door-to-door solicitations. It has not yet done so." 306 Or at 556. (Footnote omitted.)

Similar possibilities are present here.

doorways or stairways of business houses, or in any other place where such activity causes congregation and congestion of people or vehicles on the streets or sidewalks.''

Eugene Code section 3.338 provides:

"[E]ach [licensed] vendor shall:

"(a)   Submit to the city, upon approval of an application, the hold harmless agreement required by rules adopted under this chapter * * *;

"(b)   Submit to the city * * * proof of public and personal liability * * * insurance required by rules adopted under this chapter;

"(c)   Locate anywhere except in areas zoned RA, R-1, R-2, R-3, or R-4 under Chapter 9 of this code;

"(d)   Vend only from vending units that meet the requirements of rules adopted under this chapter;

"(e)   Sell only the food, beverages, flowers or balloons designated on the license;

"(g)   Pay the right-of-way fee; and

"(h)   Occupy the vending location five days per week for six hours per day * * *.''

The majority says:

"The critical fact is not that the Eugene ordinance allows *some* sales, but that it does not allow the sale of *defendant's books*. It therefore reaches protected expression in essentially the same way that the Hillsboro ordinance did. [*See City of Hillsboro v. Purcell*, 306 Or 547, 761 P2d 510 (1988).] Like that ordinance, this legislation is not 'contained by the consequences' that it seeks to prevent.'' 119 Or App at 298. (Emphasis in original.)

The majority and I agree that selling is a form of communicative behavior that includes speech and may involve goods such as books that are protected expression. However, a regulation of commercial speech is not always unconstitutional because it restricts one's choice of a place for self-expression when the speech is not the object of the regulation. *City of Portland v. Tidyman*, 306 Or 174, 182, 759 P2d 242 (1988). As the court noted in *City of Hillsboro v. Purcell, supra*, "governments can regulate [commercial speech] to a greater degree and for different purposes than other protected speech.'' 306 Or at 553.

The majority fails to consider the constitutional authority of the City to reasonably regulate commercial activities involving protected expression in congested places. If the majority is holding that defendant has the constitutional right to sell his joke books in the middle of a crowded public street or sidewalk, then the majority is wrong. The guarantee of freedom of commercial speech is not without its limits. In assessing whether the city exceeded its regulatory authority, there must be a "reasonable fit" between the city's legitimate interests in the safety of its citizens on its public ways and the means it chooses to regulate commercial speech. *See e.g., City of Cincinnati v. Discovery Network, Inc.*, 507 US ___, 113 S Ct 1505, 123 L Ed 2d 99 (1993).

The proper analysis begins with an examination of the focus of the ordinances. Proof of a violation requires evidence of these elements: (1) A person must set up a place for the display or sale of merchandise or be involved in the activity of selling; (2) in a street, sidewalk, doorway, stairway, or other public place where such activity causes congestion; (3) without being licensed to do so. The first inquiry is whether the ordinances focus on the content of speech. If they do, then we must analyze whether an historical exception saves the ordinances. The majority holds that the ordinances are a "content-based regulation." 119 Or App at 299. If that were correct, then it errs by failing to analyze whether an historical exception saves the ordinances. Moreover, it compounds the error by engaging in an overbreadth analysis that is improper if the ordinances focus on the content of speech. *Moser v. Frohnmayer*, 315 Or 372, 845 P2d 1284 (1993). *See also State v. Plowman*, 314 Or 157, 163-64, 838 P2d 558 (1992).

Contrary to the holding of the majority, these ordinances do not regulate the content of speech. Rather, they regulate the *places* in which commercial speech can occur. Although the indirect result may be to regulate the content of expression, *i.e.*, the selling of merchandise, so too is the result of other laws that make expressive conduct unlawful such as intimidation in the first degree, ORS 166.165(1)(a)(A), harassment, ORS 166.065(1)(c), and menacing, ORS 163.190(1). These kind of laws are constitutional because

they proscribe forbidden effects by imposing reasonable limitations on expressive behavior. What is prohibited by the ordinances in this case is the activity of selling in particular places. The ordinances are directed not at the content of the expression but to an identifiable effect of the expression (congestion on streets and sidewalks). Because they focus on the pursuit or accomplishment of forbidden results and not on the substance of speech, they are to be analyzed for constitutional over-breadth. *State v. Robertson*, 293 Or 402, 418, 649 P2d 569 (1982).

A city can constitutionally enact legislation to regulate conduct thought to be detrimental to the public interest so long as the limitation is reasonable in the light of the purpose of the ordinance and the constitutional authority to enact laws for the protection of the citizenry. If the proscription extends beyond what the city can constitutionally regulate, then it burdens expression that is otherwise protected, and is over-broad. *See City of Eugene v. Powlowski*, 116 Or App 186, 190, 840 P2d 1322 (1992).

*City of Hillsboro v. Purcell, supra*, illustrates the principle. The ordinance in that case was over-broad because it prohibited all door to door solicitation for any purpose at any time. Although it was intended to protect the public from the vices of the sale of goods by itinerant peddlers, it had the effect of precluding any person or group from soliciting financial support for any purpose through the sale of merchandise thereby reaching protected expression. The ordinance was over-broad because the limitation was not reasonable in the light of the intended purpose of the regulation and the constitutional power of the city to enact laws to protect its inhabitants.

This ordinance is different from the ordinance in *City of Hillsboro v. Purcell, supra*, in a material respect, and the majority errs when it relies on that holding as the basis of its decision. Some kinds of door to door selling do not result in the harm to the public that the Hillsboro ordinance sought to prevent which was to control fraud by unscrupulous peddlers. In contrast, any selling activity at the designated locations in the city of Eugene could cause congestion in areas of pedestrian and vehicular traffic.

The majority acknowledges that fact, but says:

"It *may* be that the city's legislation identifies a harmful effect, but nothing in it addresses or implies why the sale of joke books gives rise to that effect in any way that the sale of balloons does not. Accordingly, the city's prohibition does not proscribe or focus on an effect; it proscribes the sale of particular commodities, including joke books, but allows the sale of others. The dissent is correct in its premise that different *activities* may be regulated differently under Article I, section 8. This ordinance, however, does not do so; rather, it regulates different exercises of the *same* commercial and communicative *activity* differently, on the basis of what is sold and communicated. That content-based regulation is what Article I, section 8, prohibits above all else. *See, e.g., Moser v. Frohnmayer, supra.* It cannot be relied on by the city to save its ordinance as one that merely regulates the effects of speech." 119 Or App at 299. (Emphasis in original.)

The majority's perception that the ordinances are "content-based" for the reason that they prohibit some selling activities and prohibit all others is also wrong. The ordinances do not single out the content of joke books as their objective. They prohibit all selling activities in certain places. The majority seizes on the fact that the city has created certain exceptions to the absolute prohibition, and has chosen to license and regulate the excepted activities. Those exceptions do not make the ordinances over-broad when the city has the authority to declare all selling activities on its streets and sidewalks unlawful in the constitutional exercise of its regulatory power. Moreover, the activity of selling of books in the middle of the street or on the sidewalk is not the same activity as the selling of the excepted commodities and may create different hazards for the public contrary to the majority's suggestion. It may be that the majority disagrees with the scope of the exceptions that have been created and believes that the sale of books ought to be permitted on sidewalks because those sales could also be reasonably regulated, but that does not make the ordinances unconstitutional because of overbreadth.

The question remains whether the regulation reaches protected expression in that it is not limited to the consequences it seeks to prevent. When the Eugene City Council considered the adoption of the ordinances, it received

a report from staff that indicated that sidewalk vending was occurring at a location where a "high volume of pedestrian, bicycle, and vehicular traffic" existed including buses that picked up and discharged passengers twelve times an hour throughout the day. They observed the location at peak traffic times and opined that continuation of sidewalk vending did not adequately address concerns about congestion and public safety. One witness said that the travel of handicapped people at that location were inhibited by sidewalk vendors and that a five-foot wide expanse of sidewalk was necessary to ensure that pedestrians had room to pass each other. Another witness characterized the congestion as "hazardous." Another said that a sidewalk would have to be 15 or 16 feet wide in order to accommodate a seven-foot wide pushcart without impeding traffic. In the light of the record, I would hold that the ordinances are not overbroad because they are not an unreasonable restriction on the freedom of commercial expression. *See Lloyd Corporation v. Whiffen*, 315 Or 500, 849 P2d 446 (1993), and *Clackamas Town Center v. Wolf*, 315 Or 557, 849 P2d 477 (1993).

Defendant next attacks the ordinance on the basis that it violates the First Amendment. The First Amendment also does not afford individuals who wish to express their opinions "a constitutional right to do so whenever and however and wherever they please." *See Greer v. Spock*, 424 US 828, 836, 96 S Ct 1211, 47 L Ed 2d 505 (1976), *quoting Adderly v. Florida*, 385 US 39, 48, 87 S Ct 242, 17 L Ed 2d 149 (1966). Even though public sidewalks and streets can be places for a public forum, a regulation of time, place, or manner of protected speech can be constitutional if it is "narrowly tailored to serve the government's legitimate content neutral interests * * *." *Ward v. Rock Against Racism*, 491 US 781, 798, 109 S Ct 2746, 2757, 105 L Ed 2d 661 (1989). Moreover, the regulation will not be invalidated simply because a court concludes that the government's interest could be adequately served by a lessor restriction. Because there is a "reasonable fit" between the interests in safety and protected expression, I would hold this ordinance constitutional under the Federal constitution.

Defendant next argues that the ordinance violates the equal privileges clause of Article I, section 20, of the

Oregon Constitution as well as the equal protection clause of the Fourteenth Amendment. He points to the fact that section 3.338(d) permits the licensing of vendors who only sell food, beverages, flowers or balloons, but there is no provision for the licensing of vendors who sell books. We said in *Northwest Advancement v. Bureau of Labor*, 96 Or App 133, 772 P2d 943, *rev den* 308 Or 315 (1989), *cert den* 495 US 932 (1990), that to make a successful argument on this basis, an appellant must show:

"(1) That another group has been granted a 'privilege' or 'immunity' that their group has not been granted, (2) that the regulations discriminate against a 'true class' on the basis of characteristics that they have apart from the regulations themselves and (3) that the distinction between classes either is impermissibly based on persons' immutable characteristics and reflects 'invidious' social or political premises or has no rational foundation in the light of the enabling statute's purposes." 96 Or App at 142.

The first element is satisfied. Vendors of beverages, flowers, food and balloons are granted a privilege that vendors of books are not. Defendant relies on our holding in *Northwest Advancement v. Bureau of Labor, supra,* as support for his argument that he is a member of a "true class" because he is in a group of sidewalk vendors who sell wares other than the above items. At issue in that case was the validity of an administrative rule that regulated the employment of minors as house to house salesmen, but which exempted newspaper carriers and vendors from its application. We held that "newspaper carriers and vendors are a 'true class' in the sense that they are identified in the regulation by characteristics which they have apart from the regulation itself, *i.e.*, the sale and distribution of a particular product." 96 Or App at 142. In other words, the activity and not the law, provided the basis for the classification. *See Hunter v. State of Oregon*, 306 Or 529, 533, 761 P2d 502 (1988). The second requirement is satisfied.

The first prong of the third requirement is not met because the classification is not based on immutable characteristics reflecting invidious social or political premises. Anyone who wishes to come within the favored class of vendors who sell food, beverages, flowers, or balloons may do so by engaging in that occupation. The remaining question is

whether the classification lacks a rational foundation in the light of the purpose of the ordinance.

Defendant argues that the concerns expressed before the council were congestion, litter, public safety, city liability and unfair competition, and that "the limitation of types of wares sold actually flies in the face [of] several of these concerns." The trial court found:

> "The defendant argues that the council's decision to limit licenses to balloons [sic], flowers [sic], and food vendors is arbitrary. However, a careful reading of the record highlights the council's balancing of the need to attract business and patrons through a carnival-like atmosphere over against [sic] the need not to create extensive liability or congestion problems for permanently established businesses. The decision reached reflects legislative intent and appropriate use of legislative making power."

The city is entitled to make distinctions of degree having a rational basis, and those distinctions are presumed to be rational if there is any conceivable state of facts on which to support the distinction. *Huckaba v. Johnson*, 281 Or 23, 26, 573 P2d 305 (1978). I agree with the trial court that the city could rationally decide to permit certain activities to occur on sidewalks and streets balancing the benefit of those activities with the need to maintain congestion-free public ways. For the same reasons, the ordinance survives similar scrutiny under the Fourteenth Amendment. *See State v. Clark*, 291 Or 231, 243, 630 P2d 810, *cert den* 454 US 1084 (1981).

Defendant assigns as error the failure to grant his demurrer, to dismiss the accusatory instrument, and the failure to grant his motion for judgment of acquittal, all based on the above arguments. The same analysis applies to each argument regardless of the procedural context in which it is made. The trial court correctly ruled on each issue.

I dissent.

Rossman and Riggs, JJ., join in this dissenting opinion.