*551 DURHAM, J.,
dissenting.
I agree with several of the conclusions that the majority reaches in its analysis of this case and therefore mention them briefly. I join in the majority’s rejection of the state’s invitation to incorporate a balancing of competing interests into this court’s Article I, section 8, jurisprudence. I agree that the rights protected by Article I, section 8, apply to verbal and nonverbal expression in films, photographs, videotapes, and similar media.[1]1 also concur that the state has failed to satisfy the historical exception analysis described in State v. Robertson, 293 Or 402, 412, 649 P2d 569 (1982).
However, the majority gets off on the wrong foot by declaring that ORS 163.680 (1987)[2] restrained only the effects of speech, not speech itself, and only effects that necessarily cause harm to children. Important statutory terminology that the majority refuses to confront demonstrates that the majority’s construction is erroneous. That error in statutory construction leads the majority to an incorrect constitutional analysis. Those errors compel me to dissent.
I turn first to the issue of the proper construction of ORS 163.680 (1987). Before we test any statute for compliance with constitutional requirements, it is imperative that we accurately discern the specific prohibition that the statute embodies. The majority forgets that our task is to interpret the statute that the legislature enacted, not to reform the statute and give it a different meaning in order to simplify this court’s constitutional inquiry.
The obstacle that defeats the majority’s proposed construction of ORS 163.680 (1987) is the word “simulated” *552 in the definition of “sexually explicit conduct” in ORS 163.665(3) (1987).[3] That term in the statutory definition is critical to a proper understanding of the kinds of films to which the statute applied.
In overview, ORS 163.680 (1987) criminalized commerce in certain films if they exhibited a child engaged in “sexually explicit conduct.”[4] ORS 163.665 (1987) specially defined “sexually explicit conduct” as “actual or simulated” *553 (emphasis added) sexual behavior of the kinds listed in the statute. Thus, ORS 163.680 (1987) criminalized paying to see a film that purports to display a child engaged in a sexual act when, in reality, the child’s involvement is a “simulation.”
The majority fails to address the significance of the term “simulated” in the statutory definition beyond its imponderable ipse dixit that “[m]oreover, the child’s participation in the act must be real, i.e., the sexual act may be ‘simulated,’ but the child’s participation in that act cannot be.” 323 Or at 540 (emphasis in original). That statement evades both the words of the statutory definition and their plain meaning.
A dictionary defines “simulated” as:
“[0]f a feigned or imitative character: MOCK, SHAM * * *.” Webster’s Third New Int’l Dictionary, 2122 (1993).
The noun form of the term, “simulation,” is defined as:
“la: the act or process of simulating: IMITATION, PRETENSE * * * b: a sham object: COUNTERFEIT * * * 2: willful deception: COLLUSION, MISREPRESENTATION 3: one that shows a superficial resemblance: ANALOGUE * * *.” Id.
In addition to applying those definitions, we are bound to give effect to the other words in the statutory phrase in question, “actual or simulated.” The term “simulated” applies to all visual representations that do not involve “actual” sexual conduct. The conjunction “or” signifies that the definition applies equally to visual representations of “actual” and “simulated” sexual acts or any combination of those two categories. Properly understood in view of the ordinary meaning of the statutory terms, the phrase “actual or simulated” incorporated the full spectrum of visual representations of sexual conduct, ranging from those that involve genuine sexual behavior in their production (that is, “actual”) to those that consist entirely of a false pretense or misrepresentation of the occurrence of a sexual act when, in fact, no sexual act of any kind occurs during their production (that is, “simulated”). Between those poles, the phrase, in substance, includes any visual representation that appears to display a *554 listed sexual act whether or not the production involves actual sexual conduct by the persons portrayed on film.
The word “simulated” in this context embodies a restriction that is remarkable in its requirement — compelled by every dictionary definition of that term — that the film be one that misrepresents the occurrence of a sexual act. The production of some visual representations of a simulation of a sexual act by a child could involve the child in conduct that actually harms the child. However, the statute did not specify in terms, as an object of regulation, either the films that fall in that category or any harm to children that their creation entails. That is no inconsequential legislative oversight, particularly in the context of speech regulation, where clarity of expression is a constitutional value of the highest order. The legislature cannot forbid all speech about a “simulation” of a subject of expression and thrust on the court the task of scavenging the dictionary for any possible way to read the restriction to save its constitutionality. That is less the proper interpretation of the ordinary meaning of the legislature’s terminology than the substitution of the court’s own preconception of a proper restriction on sexually explicit speech.
Contrary to the majority’s premise, we cannot say that every visual representation of a child in a simulated sexual act necessarily depends for its existence on conduct that harms the child. In the latter context, a simulation may consist entirely of film images that portray a real child engaged in what appears to be sexual conduct but what is, in reality, not sexual or otherwise harmful conduct. For example, a film may portray a realistic image of what appears to be a sexual act by a child when, in reality, the image is a mere simulation created from film of an actual child innocently playing, dancing, or sleeping while fully clothed. In that circumstance, the conduct of both the child and film producer is perfectly lawful and not harmful to the child, yet the statute criminalized commerce in such a film.
Only by misconstruing the statute can the majority evade the restraint on expression that the statute embodies. The majority construes the phrase “actual or simulated” to mean “actual.” As a result, the majority concludes that the statutory definition of “sexually explicit conduct” extends *555 only to visual representations that involve “actual” abuse of children. I cannot imagine a more obvious instance of an appellate court failing to come to grips with the best evidence of the legislature’s intention: the statute’s words.
The majority purports to find support for its statutory interpretation in a review of statutes other than ORS 163.680 (1987). I do not agree. The correct focus is on the terms of ORS 163.680, not other laws. Additionally, the majority’s review of the “context” of ORS 163.680 is unpersuasive. ORS 163.683 (1987) created a defense to a prosecution under ORS 163.680 (1987) if production of the film did not violate ‘laws prohibiting production of such visual reproductions in the jurisdiction where it was produced * * That statutory defense depends on the absence of a law forbidding such visual reproductions in some other jurisdiction. It does not, by its terms, require that actual abuse of a child occur during the production. In fact, the phrase “such visual reproductions” in the statute incorporated the prior phrase “sexually explicit conduct,” ORS 163.665 (1987), which, in turn, encompassed “simulated” sexual acts. The other statutes referred to by the majority, ORS 163.670 (1987), 163.673 (1987), and 163.693 (1987), also depended on the statutory definition of “sexually explicit conduct” in ORS 163.665 (1987). Such circular reasoning adds nothing, let alone contextual support, to the majority’s statutory analysis.
The majority’s misconstruction of the statute leads it to commit other significant errors of constitutional magnitude. The majority holds that the statute did not focus on the content of films and photographs but, instead, focused on a harmful effect of those communicative materials, the “actual” sexual abuse of children. See State v. Stoneman, 323 Or at 546 (“ORS 163.680 (1987) prohibited commerce in material, the production of which necessarily involves harm to children”) (original emphasis; footnote omitted).
The flaw in that logic is that the statute, by its terms, equally punished commerce in material, the production of which involves either a genuine sexual act or a pure misrepresentation of the occurrence of a sexual act. A “simulated” sexual act is, by definition, one in which no actual sex act occurs. The majority fails to explain how a simulation *556 that involves no sexual activity by a child necessarily involves actual sexual abuse of a child.
The majority attempts to rationalize its answer by effectively erasing the words “or simulated” from the statute. We are forbidden to do that. ORS 174.010 provides:
“In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted * * (Emphasis added.)
The majority’s evasion of the actual focus of the statute permits it to set up a false issue {viz., “[m]ay the legislature regulate commerce in communicative products derived from the actual sexual exploitation of children?”) 323 Or at 549 and then knock it down. If the answer to that question seems to be obvious, it is because the majority’s question itself misstates the true issue in order to achieve an easy answer. No one benefits from simplistic answers to complex constitutional questions.
The Court of Appeals held (correctly in my view) that ORS 163.680(1) (1987) was a content-based restriction on expressive material. State v. Stoneman, 132 Or App 137, 143-44, 888 P2d 39 (1994). It proscribed commerce in certain films and other visual representations because of their content. That conclusion seems inescapable, because films that contain images of children engaged in conduct outside the definition in ORS 163.665 (1987) (“sexually explicit conduct”) were not regulated. Under State v. Robertson, 293 Or 402, 412, 649 P2d 569 (1982), and its progeny, a content-based restriction on speech violates Article I, section 8, unless it satisfies this court’s “historical exception” doctrine. I agree with the majority that ORS 163.680 (1987) did not qualify as a historical exception. Under the rationale stated in Robertson and City of Portland v. Tidyman, 306 Or 174, 759 P2d 242 (1988), ORS 163.680 (1987) violated Article I, section 8.
The state contends that the statute qualified as a valid regulation of a harm of speech, because it protected children from the effects of child abuse in the production of films and similar materials. I agree that a law may forbid speech if *557 it specifies expressly or by clear inference the serious and imminent effects that it is designed to prevent. See Moser v. Frohnmayer, 315 Or 372, 379, 845 P2d 1284 (1993) (stating principle).
ORS 163.680 (1987) fails that test, because its words restrained films that portray a simulation of sexual conduct, that is, conduct that, by definition, involves no actual sexual activity. The state has not demonstrated, as it must in order to sustain the statute, that a child’s involvement in such a simulation in the course of making a film poses any risk of harm to the child, let alone the serious and imminent harm that the Moser test requires.
The Court of Appeals correctly relied on Tidyman in striking down this statute. In Tidyman, this court declined to examine prefatory findings that accompanied an adult book store ordinance to discern the types of harm that the ordinance purportedly restrained. Examination of the operative text of ORS 163.680 (1987) similarly discloses no clear specification of a proscribed harm. Any attempt to draw the inference that the statute was intended only to restrain films that necessarily harm children is defeated by its explicit focus on films that display a simulation of a sexual act. Nothing in the statute’s text or context remotely suggests that the statute was limited only to simulations that involve actual harm to children.
If a statute restrains privileged speech but also restricts harmful effects, such as child abuse, that the legislature may proscribe, we must determine whether we can interpret the statute to avoid such overbreadth. Robertson, 293 Or at 418. I conclude that this court cannot rid ORS 163.680 (1987) of its overbreadth by interpretation. Two factors are significant to my analysis. First, the legislature expressed its restriction in terms of the content of certain speech, not a harm necessarily resulting from speech. Second, the legislature expressly restrained films portraying any simulation of a sexual act and did not in terms confine the statute to films that portray actual child sexual conduct. Any attempt to excise from the statute the legislature’s policy choice to restrain films that simulate sexual conduct would produce a markedly different statute bearing no resemblance *558 to ORS 163.680 (1987). That sort of radical surgery on a statute is not this court’s proper task.[5]
In conclusion, ORS 163.680 (1987) satisfied none of the rules that this court observes in scrutinizing statutes challenged under Article I, section 8. The trial court did not err in sustaining defendant’s demurrer to the indictment.
I dissent.

 In this opinion, I use the word “film” to refer to all forms of visual reproduction that are included within the coverage of ORS 163.680(1) (1987), which is quoted in footnote 2 below.

 ORS 163.680 (1987) provided:
“(1) It is unlawful for any person to pay or give anything of value to observe sexually explicit conduct by a child known by the person to be under 18 years of age, or to pay or give anything of value to obtain or view a photograph, motion picture, videotape or other visual reproduction of sexually explicit conduct by a child under 18 years of age.
“(2) Violation of subsection (1) of this section is a Class C felony.”

 ORS 163.665 (1987) provided:
“As used in ORS 163.670 to 163.690, ‘sexually explicit conduct’ means actual or simulated:
“(1) Sexual intercourse or deviant sexual intercourse;
“(2) Genital-genital, oral-genital, anal-genital or oral-anal contact, whether between persons of the same or opposite sex or between humans and animals;
“(3) Penetration of the vagina or rectum by any object;
“(4) Masturbation;
“(5) Sadistic or masochistic abuse; or
“(6) Lewd exhibition of the genitals or anus.”

 The roots of ORS 163.665 (1987) are not clear. The Oregon legislature may have derived that statute from the statute challenged in New York v. Ferber, 458 US 747, 102 S Ct 3348, 73 L Ed 2d 1113 (1982). In Ferber, the Supreme Court upheld, against a First Amendment challenge, a New York statute that criminalized the use of a child in a sexual performance. The New York Court of Appeals had struck down the statute as an infringement of protected speech. The statute incorporated a special definition of a statutory term, “sexual conduct,” that said:
“ ‘Sexual conduct’ means actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals.”
The Court did not address the significance, under the First Amendment, of the term “simulated” in the definition except to state, without explanation:
‘We note that the distribution of descriptions or other depictions of sexual conduct, not otherwise obscene, which do not involve live performance or photographic or other visual reproduction of live performances, retains First Amendment protection.” Id., 458 US at 764-65.
Moreover, the First Amendment overbreadth analysis followed in Ferber bears little resemblance to this court’s overbreadth analysis under Article I, section 8. See State v. Robertson, 293 Or 402, 410, 649 P2d 569 (1983) (describing Oregon’s overbreadth analysis).
Following the decision in Ferber, the Oregon legislature adopted ORS 163.665 (1985), which defined “sexual conduct” to mean
“actual or simulated sexual intercourse, including genital-genital, oral-genital, anal-genital or oral-anal intercourse; bestiality; masturbation; sadistic or masochistic abuse; or lewd exhibition of the genitals.”
ORS 163.665 (1987) modified that list of sexual acts but retained the introductory phrase, “actual or simulated.”

 I do not contend, as the majority asserts, 323 Or at 540 n 5, that the majority has chosen a plausible but incorrect interpretation of the term “simulated.”Rather, by interpreting the term “simulated” to mean only visual representations produced through actual child abuse, the majority adopts a reading of that term that is implausible, because it contradicts every ordinary definition of that term. Thus, the majority substitutes its policy choice for that adopted by the legislature. The majority’s suggestion that it might be able to reach the same conclusion by interpreting the statute to avoid its constitutional invalidity fails to demonstrate that the majority’s construction would conform to the legislature’s policy choice and, in any event, would pass muster under this court’s overbreadth methodology.